DONALD V. GREEN
*vs.*
ALLAN L. ROBBINS

Knox.   Opinion, January 12, 1962

*Christopher S. Roberts*, for plaintiff.

*Richard A. Foley, Asst. Atty. Gen.*, for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ.   DUBORD, J., did not sit.

WEBBER, J.   On exceptions.   The petitioner for the writ of habeas corpus seeks release from custody at the Maine State Prison.   By leave of court he prosecutes these exceptions to an adverse ruling of a single justice below *in forma pauperis*.   The points of law raised in his behalf have been ably presented by court appointed counsel.

The record shows that petitioner was convicted of a misdemeanor and sentenced to an indeterminate term in the Reformatory for Men; that during his incarceration there, on certificate of the superintendent of the institution that petitioner "forcibly attempted to escape from said reformatory" and on written approval of the Commissioner of Mental Health and Correction (see change of title, P. L., 1959, Chap. 360, Sec. 2), the petitioner was transferred to the custody of the Maine State prison; and that the maximum time during which the petitioner could legally be held in the Reformatory for Men has not yet expired (R. S., Chap. 27, Sec. 67 as amended).

The petitioner asserts that he is illegally detained in the Maine State Prison in the absence of any new and appropriate action of a court of competent jurisdiction. The determination of the issue tendered rests on the interpretation of certain applicable statutes and in particular upon the meaning of R. S., Chap. 27, Sec. 73.

The pertinent portion of Sec. 73 provides:

> "Whenever any inmate of said reformatory escapes therefrom, or forcibly attempts to do so or assaults any officer or other person in the government thereof, the superintendent may certify that fact on the original mittimus, with recommendation that said person be transferred to the state prison and present it to the commissioner for his approval. Upon approval of said recommendation by the commissioner, said inmate shall be transferred from the reformatory to the state prison, where he shall serve the remainder of the term for which he might otherwise be held at said reformatory, *or at the discretion of the court* he may be punished by imprisonment in the state prison for any term of years. Prosecution under the provisions of this section may be instituted in any county in which said person may be arrested or in the county of Cumberland but in such cases the

> cost and expenses of trial shall be paid by the county from which said person was originally committed, and payment enforced as provided in the following paragraph." (Emphasis supplied.)

The petitioner contends that the words "or at the discretion of the court" were intended to provide an inmate of the reformatory with an opportunity for trial upon the charge of either escape, forcible attempt or assault as the case may be, and that he should be committed to the state prison only after conviction therefor. He also asserts that he is entitled to the protection of R. S., Chap. 27, Sec. 75, dealing with the transfer of "incorrigible" inmates of the reformatory which specifically prohibits the transfer of an inmate as "incorrigible" unless he was originally convicted of a felony.

The words selected from the quoted portion of Sec. 73 for special emphasis, if read in present context, are confusing and tend to obscure legislative intent. Since the court always has discretion as to sentence within the limits imposed by statute, it becomes necessary to determine why the statute should contain a specific reference to "discretion" and whether that reference is intended to make a mere custodial transfer dependent on court action. The explanation is apparent when we review the history of this particular section. As it appeared in R. S., 1930, Chap. 152, Sec. 84, the pertinent portion thereof provided:

> "Any person lawfully committed to said reformatory who escapes therefrom or forcibly attempts so to do or assaults any officer or other person employed in the government thereof shall be punished by additional imprisonment in said reformatory for not more than one year to commence at the expiration of the term for which he might have been held as provided in Sec. 79, *or at the discretion of the court* he shall be punished by imprisonment at hard labor for any term of years. Prosecution under this section may be instituted in

any county in which said person may be arrested or in the county of Cumberland but in such case the costs and expense of trial shall be paid by the county from which said person was originally committed, and payment enforced as provided in the following paragraph." (Emphasis supplied.)

While Sec. 84 remained in effect a new criminal prosecution was required in every case and the court upon conviction was given a discretionary choice as to sentence. He could order a new and additional sentence to the reformatory or in his discretion he could order sentence to the state prison for any term of years. In this context the words "or at the discretion of the court" have obvious meaning and their purpose can be clearly understood.

P. L., 1941, Chap. 140, Sec. 4 repealed the above-quoted language as it had appeared in R. S., 1930, Chap. 152, Sec. 84 (and which remained unchanged in the second paragraph of P. L., 1933, Chap. 1, Sec. 371), and enacted in place thereof a new section which, except for minor alterations in no way pertinent to this discussion, has now become R. S., Chap. 27, Sec. 73. We are satisfied that the retention in Sec. 73 of the phrase "or at the discretion of the court" was merely the result of inartistic draftsmanship and no significance should be attached to it. It is evident that the legislature in 1941 intended to substitute for the old theory of discretionary choice of sentence vested in the court a new theory of choice of procedural action to be exercised by the institutional authorities. It is significant that the legislature eliminated the possibility of a new sentence to the Reformatory for Men for an additional term. Under the section as it now stands the authorities may determine that nothing more than the need for greater custodial security is involved and may effect a transfer of the inmate to a maximum security institution. Alternatively, the authorities, or in an appropriate case the victim of an assault, may elect to prosecute the offending inmate for his escape,

forcible attempt or assault as the case may be. In the latter event the inmate upon conviction might be sentenced by the court to a term in the state prison. The important and determinative factor is that a mere transfer by the authorities for custodial security reasons involves no necessity for a new conviction or a new sentence. The inmate after transfer is still serving his original sentence to the Reformatory for Men with no enlargement thereof. He is in custody at the prison only because it has security facilities not available at the reformatory. We add that the petitioner retains the same right to consideration for parole which would obtain if he were in custody at the reformatory, although the conduct which led to his transfer would be a proper factor for consideration in determining whether or not parole should be granted. In our view, the legislature acted within its competence in assigning to the superintendent and the commissioner a discretionary power of transfer of custody for security reasons when the original judgment and sentence are in no way changed or affected, and in such case no further action of any court is required.

We do not consider that the provisions of R. S., Chap. 27, Sec. 75 are applicable to the case of one situated as was this petitioner. This section deals with inmates of the reformatory termed "incorrigible." The statute supplies its own definition of incorrigibility. It places in this category any inmate of the reformatory "whose presence therein may be seriously detrimental to the well-being of the institution or who willfully and persistently refuses to obey the rules and regulations of said institution." Upon certificate by the superintendent that an inmate is by him deemed and declared incorrigible within the meaning of this definition, the matter is referred for determination to a "board of transfer" comprising the commissioner, the warden of the state prison and the superintendent of the Augusta state hospital whose approval of a recommendation to transfer

must be unanimous to be effective. In such a case we are dealing with a course of conduct which may not involve any single instance of commission of a separate punishable crime. It is the total effect of such conduct which must be assessed by the board of transfer and it is for this reason that great care must be exercised and unanimous approval obtained from a board which does not include the superintendent of the reformatory. Incorrigibility as defined is in sharp contrast to the conduct which may give rise to administrative transfer under Sec. 73. The latter section deals with three specific acts, any one of which is an offense which might be the subject of a new prosecution, a new conviction and a new sentence. Each is serious in nature and is deemed by the legislature a sufficient ground for custodial transfer on approval by the commissioner alone. Whenever the superintendent is satisfied that any one of these specific acts has occurred, the assessment of the general conduct of the inmate is not involved. We note in passing that incorrigibility itself, as defined by the statute, is made a crime by Sec. 75, but an independent additional sentence therefor to the state prison can only result from a new court action and conviction. In the absence of any prosecution therefor, the incorrigible inmate transferred under Sec. 75, as in the case of one transferred under Sec. 73, would continue serving his original sentence to the Reformatory for Men without change in or enlargement of that sentence. Under Sec. 75, as already noted, one originally sentenced for a misdemeanor could not be transferred to the prison as incorrigible but could be confined there only upon a new conviction for incorrigibility and a new sentence. The petitioner in the instant case was not transferred as incorrigible and the provisions of Sec. 75 have no application to his case.

It appearing from the record that the petitioner was legally and properly transferred to the Maine State Prison under the provisions of Sec. 73 for security reasons only,

and his original term of sentence to the Reformatory for Men not yet having legally expired, we conclude that his petition for the writ of habeas corpus was properly denied.

*Exceptions overruled.*