## COMMONWEALTH *vs.* RICHARD STEWART.

Middlesex.    January 13, 1926. — February 25, 1926.

Present: RUGG, C.J., BRALEY, CARROLL, WAIT, & SANDERSON, JJ.

*Homicide. Evidence,* Competency, Of state of mind. *Practice, Criminal,* Personal statement by defendant.

At the trial of an indictment for murder, the defendant had been permitted to introduce testimony by a qualified expert to the effect that from an examination it was his opinion that the mental level of the defendant "would be somewhere around twelve years of age . . . that he was not insane nor feeble minded, but low grade mental capacity, just above the feeble minded level." The trial judge restricted the use of such evidence in substance to the point, whether the defendant was of sufficient mental capacity to have an evil motive for the killing and to hold that motive in his mind for any appreciable length of time. The Commonwealth, subject to exceptions by the defendant, then was permitted to ask of a qualified expert in mental diseases these questions, all of which were answered in the affirmative: Whether or not a person of the age of approximately thirteen years was of sufficient mentality to have evil motives or malice? Whether or not a person of the mental age of thirteen years had the mental ability to plan an act? Whether or not a person of the mental age of thirteen years had the power, the mental power, to premeditate, to plan an act? Whether or not, from his examination of the defendant, in his opinion the defendant had a mentality sufficient to possess malice or evil motives? In his argument of exceptions before this court, no point was made by the defendant as to the difference between "around twelve years" and "thirteen years" in the testimony of the expert witness. *Held,* that

(1) In these circumstances the evidence was in conformity with the true principle of law as to responsibility for homicidal conduct;

(2) The questions were not objectionable in form, it not being necessary to frame them with hypothetical qualifications and circumstances.

Historical statement by RUGG, C.J., of the practice and law as established by long usage respecting the personal statement or address by a defendant to the jury at the trial of an indictment for murder.

A statement or address, made personally by the defendant to the jury after the close of the arguments and before the charge to the jury at the trial of an indictment for murder, is not evidence, and no finding can be founded by the jury on the strength of such a statement, but every finding essential to the verdict must rest upon evidence and testimony presented in the usual way and under customary safeguards as to competency and credibility.

INDICTMENT, found and returned on September 15, 1925, charging the defendant with the murder of William James on August 24, 1925.

The defendant having pleaded not guilty, J. C. Reilly, Esquire, was assigned by the court to act as his counsel.

The indictment was tried on October 19–23, 1925, before *Fosdick*, J., according to the practice prescribed by St. 1925, c. 279. Material evidence is described in the opinion.

At the close of the arguments of counsel, the trial judge said to the defendant, "Stewart, you have a right to address the jury. Do you wish to do so?" The defendant replied, "Yes," and said, "All I wish to say is I did not plan to kill William James. I had been drinking moonshine all the evening, and I don't know what I did. That's all I have got to say." The judge then said, "Now, is that all you wish to say, Stewart?" and the defendant replied, "Just that I did not plan to kill William James."

The following are material portions of the charge to the jury: "The defendant, and all defendants in all cases, criminal cases, in our Commonwealth, have the right, given to them by our Constitution, not to furnish evidence against themselves, and that means, among other things, that they are not obliged, and cannot be obliged, to take the witness stand as witnesses in any case against them.

"In this case the defendant has availed himself of that right, and the law goes further than what I have said, and says that if a defendant avails himself of the right not to testify in a case against himself, no inference unfavorable to him shall be drawn by the jury from the fact that he did not take the witness stand: and so you will bear that carefully in mind, gentlemen, when you consider the case, because the law is peremptory in that regard.

"In this case the defendant has availed himself of a right which the law gives him, to address the jury after the arguments of counsel have been made, and without being sworn and taking the witness stand. Such an address is allowed him by the law as a matter of absolute right. He may waive it if he wishes to. He did not waive it in this case, but took advantage of it.

"What he said, however, is not evidence in the case. It is not testimony in the case. It may not be regarded by you as any fact upon which you may act as you would act and must act upon the evidence in the case, the sworn testimony. You must differentiate between sworn testimony in the case, and a statement made by the defendant not under oath and not as a witness.

"It can be regarded by you, and should be and must be considered by you, as a statement of what he claims, as a statement pointing out to you those things which he wishes to bring strongly to your attention; and you will recall that he said that he did not plan to kill William James and that he was drunk when he did it, and had been drinking moonshine for some time.

"Now, those must not be taken by you as statements of fact as they could be taken by you as statements of fact if they were made under oath and upon the witness stand. They may properly be considered by you, and should be considered by you, as statements of what he claims to be the fact in the case.

"And so if he claims that he was drunk, you have a right and a duty to consider whether or not he was drunk at the time that the shooting took place, if you can find evidence in the case giving a reasonable inference that he was drunk, and if you find that he was drunk, you will apply the principles of law that I just gave you concerning drunkenness, and you have a right and a duty to consider whether or not he did plan to kill William James. That is what he is calling attention to by his statement to you, and if his statement to you does not call your attention to that consideration, then you must find, as indeed you must have whether or not he had stated that to you, whether or not this defendant did plan to kill William James, because that is one of the things that I shall speak to you later of as one of the essential elements of the crime of first degree murder.

"What I have just said you must take as the law, gentlemen, concerning the address made to you by the defendant at the close of the arguments by counsel for both sides."

The defendant was found guilty on October 23, 1925, and

on October 26 he filed the following claim of appeal: "Now comes the defendant in the above entitled cause and claims an appeal from certain opinions, rulings, directions and judgments made by the presiding justice during the course of the trial of said cause, the details of appeal to be more specifically set forth in defendant's 'Assignment of Errors' to be hereinafter filed."

The transcript of the evidence was filed on November 6, 1925, and on November 8 notice was given to the counsel for the defendant, who on November 17 filed an assignment of errors in two groups. The first group he described as follows: "The above exceptions are all based on the same grounds, to wit: That the rights of the defendant were prejudiced in that the government was allowed to ask the witness, a mental expert, general questions relative to the mental capacity of a thirteen year old person, or general questions relative to the mental capacity of the defendant himself, said questions not being based on the facts in the case, either through knowledge of the testimony on the part of the witness, or upon a proper hypothesis." The second group was described as follows: "The above exception is based on that portion of the charge of the presiding justice to the jury wherein reference is made to the defendant's address to the jury, the portion of said charge referred to . . . [is quoted in full *supra*]. The ground for the exception is the restrictions placed upon the jury by the court relative to the extent they might consider the address of the defendant in arriving at their verdict."

*J. H. Gilbride*, for the defendant.

*R. T. Bushnell*, Assistant District Attorney, for the Commonwealth.

RUGG, C.J. This is an indictment on which the defendant has been found guilty of murder in the first degree. The case comes before us under the practice established by St. 1925, c. 279.

The defendant has been permitted to introduce the testimony of a person, who qualified as an expert, to the effect that from an examination it was his opinion that the mental level of the defendant "would be somewhere around twelve

years of age . . . that he was not insane nor feeble minded, but low grade mental capacity, just above the feeble minded level." This evidence was suffered to remain in the case notwithstanding a motion by the Commonwealth that it be stricken out; but the jury were restricted by the trial judge in their use of it in substance to the point, whether the defendant was of sufficient mental capacity to have an evil motive for the killing and to hold that motive in his mind for any appreciable length of time. Neither the competency of that evidence nor the correctness of this ruling need be considered. In this state of the case the Commonwealth was permitted, subject to exception by the defendant, to ask of a qualified expert in mental diseases these questions, all of which were answered in the affirmative: Whether or not a person of the age of approximately thirteen years is of sufficient mentality to have evil motives or malice? Whether or not a person of the mental age of thirteen years has the mental ability to plan an act? Whether or not a person of the mental age of thirteen years has the power, the mental power, to premeditate, to plan an act? Whether or not, from your examination of this defendant, in your opinion he has a mentality sufficient to possess malice or evil motives?

It is plain that the posture of the case was such that the evidence thus introduced by the Commonwealth was competent. It was in conformity to the true principle of law as to responsibility for homicidal conduct. The evidence had a tendency to show whether the defendant had capacity and reason sufficient to enable him to distinguish between right and wrong as to the act charged against him and to do that act with deliberately premeditated malice aforethought. Criminal responsibility does not depend upon the mental age of the defendant nor upon the question whether the mind of the prisoner is above or below that of the ideal or of the average or of the normal man, but upon the question, whether the defendant knows the difference between right and wrong, can understand the relation which he bears to others and which others bear to him, and has knowledge of the nature of his act so as to be able to perceive its true character and consequences to himself and to others. All this is amplified

.in *Commonwealth* v. *Rogers,* 7 Met. 500, which constantly has been followed in this Commonwealth. *Commonwealth* v. *Johnson,* 188 Mass. 382. *Commonwealth* v. *Cooper,* 219 Mass. 1. *People* v. *Schmidt,* 216 N. Y. 324, 332, 336.

In view of the evidence introduced by the defendant, the questions were not objectionable in form. It was not necessary to frame them with hypothetical qualifications and circumstances. . Without impairing in the slightest degree all that is said in *Commonwealth* v. *Russ,* 232 Mass. 58, 73–76, it is enough to decide that there was no error in the admission of the several questions to which exception was saved. No point has been made of the difference between "around twelve years" and "thirteen years" in the testimony of the two expert witnesses and no importance is attached to it.

At the close of the arguments of counsel and before the charge, the defendant, who had not taken the stand as a witness, availed himself of the privilege accorded him by the court and addressed the jury briefly, in substance saying that he did not plan to kill the deceased and that having been drinking he did not know what he did. The jury were charged in effect, subject to exception by the defendant, that this statement by the prisoner was not evidence, and that in considering the case they must differentiate between sworn testimony and the statement not under oath; and that the statement could be regarded only as pointing out those matters which the defendant wished to bring strongly to the attention of the jury; and that, although not evidence, what he said could and ought to be considered as a statement of the defendant of what he claimed to be the facts in the case. The question is thus raised as to the nature of such a statement made by a prisoner upon his trial charged with murder and the consideration to be given it by the jury.

This question, so far as we are aware, has never been presented for decision in the official reports of this Commonwealth. References to the subject in our reports are rather meager.

It was said in *Commonwealth* v. *McConnell,* 162 Mass. 499, at page 501, decided in 1895, "In prosecutions for high trea-

son in England, and in capital trials here, it has been the practice to allow the prisoner, at some stage of the trial, to make to the jury such a statement as he might choose . . . . In capital trials in this Commonwealth a somewhat similar practice has prevailed, and it is not modified or abandoned in cases where the prisoner avails himself of his right to give testimony in his own behalf. But the practice as to the time of the statement has not been uniform, and the proper time is after the arguments of both counsel, and immediately before the charge to the jury." In *Commonwealth* v. *Burroughs,* 162 Mass. 513, where the defendant was on trial for a felony less than homicide, it was said, "The defendant had no right, without being sworn as a witness, to make a narrative statement to the jury, or to tell them his side of the story. . . . The refusal of the court to permit him to make any statement to the jury except by way of argument, unless he was first sworn as a witness in his own behalf, was correct, as was the final exclusion of his proposed statement when he declined either to be sworn or to argue the case." By way of illustration reference was made in *Commonwealth* v. *Dascalakis,* 246 Mass. 12, at page 32, to the fact that in "capital cases at the appropriate time the defendant has a right to make an unsworn statement to the jury."

It is said in Wigmore on Ev., § 579, that it became "customary in England to allow the accused to make a 'statement' to the jury, *i. e.* to tell his story, not on oath and not as a witness, but in the guise of an address or argument on the testimony and the whole case."

The practice in the English courts, as to the weight to be given to the statement of the defendant and the time during the trial for it to be offered, appears not to have been uniform. *Regina* v. *Beard,* 8 C. & P. 142. *Regina* v. *Manzano,* 2 F. & F. 64. *Regina* v. *Malings,* 8 C. & P. 242. *Regina* v. *Shimmin,* 15 Cox. C. C. 122, 123, 124. *Rex* v. *Sherriff,* 20 Cox. C. C. 334. *Trial of Thistlewood,* 33 How. St. Tr. 682, 894. *Trial of Ings,* 33 How. St. Tr. 958, 1107-1111. See for a review of English cases, *Rex* v. *Krafchenko,* 24 Manitoba, 652. It would not be profitable to review these decisions. The weight to be given to English decisions is much lessened by

two circumstances. The first is that it was not until the prisoners' counsel act of 1836, Sts. 6 & 7 Wm. IV, c. 114, § 1, that a defendant indicted for felony was allowed the benefit of argument by counsel. Before that time, as was said in *Regina* v. *Doherty*, 16 Cox. C. C. 306, 309, "The effect of that course was that a prisoner was obliged, in the nature of the case, to speak for himself." The second circumstance is that it was not until the passage of the criminal evidence act in 1898, St. 61 & 62 Vict. c. 36, § 1, that a person charged with crime was permitted to be a witness at his trial for the offence charged. *Rex* v. *Pope*, 18 T. L. R. 717. It is possible that these circumstances may have colored the views of various English judges.

This matter is governed by statute in several of the American States and for that reason it is not necessary to make a full examination of the decisions of other States.

Our practice has been established under different conditions. Without tracing the principle further than the adoption of the Constitution, it is plain that since 1780 "every subject" has had the "right to . . . be fully heard in his defence by himself, or his counsel, at his election." Art. 12 of the Declaration of Rights. Since 1866 defendants in capital as well as all other criminal proceedings have been permitted, at their own request but not otherwise, to be competent witnesses upon the trial of offences with which they are charged. St. 1866, c. 260, now embodied in G. L. c. 233, § 20, cl. 3. Prior to the passage of that statute, the defendant in a capital case had no way of putting his personal views directly before the jury except by statement, even though under the Constitution he was guaranteed the right to be fully heard by himself or his counsel. *Commonwealth* v. *Marsh*, 10 Pick. 56, 57. See Trial of Jason Fairbanks, printed by Russell and Cutler in 1801, page 11.

A careful examination has been made of the reports of capital trials in this Commonwealth so far as available, beginning with that of the British soldiers following the Boston Massacre in 1770. The earliest references to this subject which have come to our attention are in the first and second trials of John F. Knapp in 1830, reported by John W. Whit-

man.   At each trial the prisoner was asked if he wished to add anything to what his counsel had said and replied in the negative.   No reference appears to have been made to this incident in the charge.   The trial of John W. Webster was held in 1850 before the full court.   The defendant of course was not, and could not under the law at that time, be called as a witness.   At the conclusion of the closing argument by the Attorney General, Chief Justice Shaw addressed the prisoner by name in these words: "Before committing this cause to the jury, if you have anything to add to the arguments which have been urged on your behalf by your counsel, anything which you deem material to your defence by way of explaining or qualifying the evidence adduced against you, you are at liberty now to address it to the jury.   I feel bound to say to you, however, that this is a privilege of which you may avail yourself or not, at your own discretion."   Report of the Case of John W. Webster by George Bemis, page 449. The defendant availed himself of the privilege thus accorded and delivered an address which occupied about fifteen minutes.   No instruction appears to have been given to the jury touching the weight to be attached to this statement. Chief Justice Shaw in his charge made a single reference to the statement at page 485.   The trial of James Dwight was held in 1874 before Chief Justice Gray and Mr. Justice Endicott.   It is not reported, but from notes in handwriting it appears that the Chief Justice said to the defendant after a preliminary sentence or two, "You are entitled by the law of the Commonwealth to address the jury in person now after all the other arguments are finished.   This is a matter which is left solely to your choice.   If you wish your counsel may confer with you about it; but it rests with you to determine; you are at liberty to address the jury if you see fit.   If you should prefer to leave your case where it is now left by the address of your counsel, no inference can be made against you from your not availing yourself of this privilege.   Therefore you are absolutely free either to make an additional speech in your own behalf or to abstain from it as you think proper."   The trial of James H. Costley was in 1874.   From notes of that trial it appears that Mr. Justice Wells, in advis-

ing the prisoner, referred to this matter as "the privilege, after the evidence has been introduced and the counsel have made their arguments, to make any address or statement to the jury that he may wish to make." In other cases the statement has been made to the prisoner, by justices of this court eminent for accuracy and learning, that he had the privilege "to address the jury" in his own behalf. It is significant that in no trial in this Commonwealth, so far as we know, has any expression been used indicating that the statement of a defendant has been treated as evidence. It has commonly been referred to as an address or statement. These recurrent forms of statement of the privilege in actual trials from judges of great reputation reaching back almost a century are of great significance in fixing the nature of such statement or address as being simply what those words indicate, and as not being evidence. The proceedings in *Commonwealth* v. *Coy*, 157 Mass. 200, 211, 212, 217, are in accord.

So far as we have personal knowledge of the practice and so far as we are in any way informed as to the customs here prevalent, such a statement by a prisoner has never been regarded as evidence.

On reason it cannot be regarded as evidence. Before 1866, as already pointed out, a defendant in a criminal case was debarred from giving testimony at the trial. It would have been in direct contravention of that settled principle to treat such address or statement as in the nature of evidence. The time when the statement or address is allowed is strongly indicative of its true nature. It comes after the evidence on both sides is closed. It is subsequent to arguments of counsel. It is not given under oath. It is not given by direct examination and is not subjected to the test of cross-examination. It is not open to the prosecuting officer to reply to it either by calling witnesses or by argument. The defendant now has ample means to protect himself from unjust accusation by offering himself as a witness and giving testimony in full as to the charge against him.

The privilege of making a statement or address is extended by the law out of its humane regard to the defendant charged with a capital offence. It has come down from a time when,

by reason of the nonexistence of the rights of defendants to testify, there was much more reason for the extension of such a privilege than now, when the law affords to a defendant every opportunity to offer his own testimony as a witness.

It results from all these considerations that, under the practice and law as established by long usage in this Commonwealth, the statement or address of a defendant in the circumstances here disclosed is not evidence. It is merely a statement or address to be considered by the jury for what it is worth in the light of all the conditions under which it is given. No finding can be founded by the jury on the strength of such a statement, but every finding essential to the verdict must rest upon evidence and testimony presented in the usual way and under customary safeguards as to competency and credibility.

This conclusion is in accord with *Ford* v. *State,* 34 Ark. 649, 659, *State* v. *McCall,* 4 Ala. 643, and the well reasoned decision in *Rex* v. *Perry,* [1920] N. Z. L. R. 21.

*Judgment on the verdict.*