PEOPLE v. MYERS.

1. RAPE—RESISTANCE.
   The degree of resistance required to be shown in rape cases is generally said to be resistance to the utmost.

2. SAME—FAILURE TO RESIST—FEAR AS EXCUSE.
   Failure of prosecutrix to resist rape by defendant is excused if her will was overcome by fear of defendant.

3. CRIMINAL LAW—RAPE—EVIDENCE.
   In prosecution for rape, tried without a jury, competent evidence was sufficient, if believed by trial judge, to find defendant guilty beyond a reasonable doubt (Act No. 328, § 520, Pub. Acts 1931).

4. Appeal and Error—Probation—Record.

> On appeal from order revoking defendant's probation, a valid probation order is assumed to have been on file notwithstanding no probation order is set out in record.

5. Criminal Law—Probation Violation—Hearing.

> Under statute requiring a hearing on charges of probation violation, which may be summary, where no proof of the violation charges was presented and the trial judge merely put the question to defendant and it was denied, defendant was not accorded a ''hearing'' for violation of the conditions of the probation (3 Comp. Laws 1929, § 17374).

> North and Butzel, JJ., dissenting in part.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted April 15, 1943. (Docket No. 84, Calendar No. 42,163.)   Decided June 30, 1943.

Roger Myers was convicted of rape. Order revoking probation set aside and sentence vacated without prejudice to right to hold hearing on probation violation.

*Edward N. Barnard,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *Richard V. Nahabedian* and *Henrietta E. Rosenthal,* Assistant Prosecuting Attorneys, for the people.

Sharpe, J. Defendant Roger Myers, a single man of the age of 17 years, was convicted by a trial judge sitting without a jury of the crime of rape, as defined in the penal code, Act No. 328, § 520, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-520, Stat. Ann. § 28.788).

The people charge that the crime was committed August 8, 1941. The complaining witness, a single

woman, whose name is omitted from this opinion for obvious reasons, testified that on the evening in question she had gone to the Rouge Park pool for a swim; that she came out of the pool about 9:45 p. m. and went to a point on Plymouth road to wait for a bus to return to Plymouth; that while waiting for a bus, a car drove by with three young men in it; that the car returned and the young men invited her to go for a ride; and that upon her refusal, she was ordered, at the point of a gun, to get into the car. She said: "I got in that car because I was frightened. I thought if I didn't they might either hit me over the head with the gun or shoot me." She further testified that as they drove, she learned that the young men had been planning a holdup; that they drove out into the country and parked the car on a side-road, where all three of the young men had intercourse with her; and that later the parties returned and let the complaining witness out at the city limits of Plymouth. On the same evening, she reported the matter to the police; and at a later date, she went to Detroit to a "showup" where she identified Roger Myers and Richard Dubey from a number of men.

On October 29, 1941, the trial court found defendant Myers guilty and remanded him to the custody of the sheriff to await the report of the probation department. On November 21, 1941, Myers was placed on probation for a term of five years. On March 23, 1942, the order of probation was revoked and Myers was sentenced for a term of not less than 10 years nor more than 20 years with no recommendation. Subsequently, a motion for a new trial was made and on June 12, 1942, was denied.

Defendant Myers appeals and contends that the finding of the court as to his guilt was contrary to the great weight of the evidence.

There is evidence in the record that all three of the young men including Myers had intercourse with the girl. It is admitted that at some period during the trip the sum of $29 was extracted from the girl's pocketbook and later divided among the three young men. It is also an admitted fact that the guns used were imitation and one of them had been recently purchased from a five-and-ten-cent store.

It is claimed that the prosecutrix did not resist to the utmost. The prosecutrix testified as follows:

"I know what the meaning of the word 'sexual intercourse' is. Richard Dubey had sexual intercourse with me at that time. His private parts entered my private parts. I struggled with him. I tried to push him away, but he was, didn't do any good because he was laying on top of me. Dubey eventually got off of me. Roger Myers come over to the car. Well, when he got in the car I had, I was sitting up there and he says, 'Don't be bashful.' I said well, I didn't want to have intercourse with him either, and then he pulled the gun out, that was a smaller gun than the one was had before. That is Roger Myers. He says, 'I don't want to use this gun,' but he says, 'I may have to.' Well, then I was forced to have intercourse with him. He pushed me down. He had intercourse with me. His private parts entered my private parts."

In *People* v. *Geddes,* 301 Mich. 258, we said: "The degree of resistance required to be shown in rape cases is generally said to be 'resistance to the utmost.' " But, it is well settled that failure to resist is excused if the will of the prosecutrix was overcome by fear of the defendant. *Strang* v. *People,* 24 Mich. 1, and *Moran* v. *People,* 25 Mich. 356 (12 Am. Rep. 283). In our opinion, there was competent evidence, if believed by the trial judge, to find defendant guilty beyond a reasonable doubt of the

offense named. The conviction of defendant is affirmed.

It is next urged that the revocation of the probation order was invalid as being contrary to 3 Comp. Laws 1929, § 17374 (Stat. Ann. § 28.1134), which provides that, "All probation orders shall be revocable and terminable after summary hearing for any violation by the probationer of any of the conditions of his probation."

In our discussion of this phase of the case, we shall assume that there is a valid probation order on file in the office of the clerk of the court. The probation order is not set out in the record. Apparently, the court expected defendant to go to work and finish his high school education by attending night school, but did not state that this was a condition on which probation was granted.

On March 23, 1942, defendant was summarily brought before the trial judge and asked why the court should not set aside the order entered on November 21, 1941, putting him on probation for five years. To this question, the defendant answered that he was not guilty. There is some intimation in the record that the violation defendant was charged with was statutory rape on a 15-year-old girl, but whatever the charge was, the defendant denied it and no evidence was offered to sustain the charge.

Under a prior probation statute, a hearing on the violation of the probation order was not necessary. See *People* v. *Dudley*, 173 Mich. 389. The above case was decided under the provisions of Act No. 91, Pub. Acts 1903, as amended by Act No. 124, Pub. Acts 1909.

The above act, as amended, was repealed by Act No. 105, Pub. Acts 1913, section 4 of which, being 1 Comp. Laws 1915, § 2032, provided:

"At any time during the period of probation the court may, upon report by a probation officer or other satisfactory proof of the violation by the probationer of any of the conditions of his probation, revoke and terminate the same, and issue a warrant for the arrest of the probationer. * * * Upon the probationer being brought before the court for violation of his probation, the court, in its discretion, may revoke and terminate such probation and impose the sentence provided by law."

*People* v. *Hodges,* 231 Mich. 656, was decided under the above law. We there said:

"While it is not necessary that a formal hearing be had to revoke the probation (*People* v. *Dudley,* 173 Mich. 389), yet we think the better practice was adopted by the trial judge in the instant case of fixing a day of hearing and giving the defendant an opportunity to be heard."

In 1925, the legislature enacted Act No. 203, Pub. Acts 1925, which amended Act No. 105, § 4, Pub. Acts 1913, and provided for a summary hearing.

The present law, 3 Comp. Laws 1929, § 17374 (Stat. Ann. § 28.1134), provides:

"All probation orders shall be revocable and terminable after summary hearing for any violation by the probationer of any of the conditions of his probation; and the court may in its probation orders or by general rule, or both, provide for the apprehension, detention and confinement of any probationer accused of violating the terms of his probation, for the presentation of charges of such violation and the hearing therein; * * * but in case the court shall fail to so provide, or in any case by consent of the court, proceedings for such termination and revocation may be instituted by petition and order to show cause, and the court on

presentation of such petition and hearing on such order may make all such orders respecting the apprehension, detention, confinement, and disposition of the probationer and all other matters in relation thereto, as in its judgment the welfare and protection of the public and probationer may require.''

Under the present law a hearing on charges of probation violation, which may be ''summary,'' is necessary before a probation order can be revoked. The statute speaks in terms of ''presentation of charges'' of probation violation and ''hearing therein.'' In our opinion the putting of the question by the trial judge and the denial of the same by the probationer did not constitute a ''hearing'' for violation of the conditions of the probation. No proof of the violation charges was presented. This we think was necessary before the court could determine whether or not there had been violation of the conditions of the probation.

The order revoking probation is set aside, the sentence vacated and the defendant remanded to the custody of the court, but without prejudice on the part of the trial court to conduct a hearing on violation of the terms of the probation order.

CHANDLER, STARR, WIEST, and BUSHNELL, JJ., concurred with SHARPE, J.

BOYLES, C. J. (*concurring in result*). I concur in the result reached by Mr. Justice SHARPE, but do not agree with his statement that ''proof of the violation charges'' is necessary before the court can revoke probation. This would entail taking of testimony to prove the violation, as I read Mr. Justice SHARPE's opinion. On the other hand, the proceed-

ings before the court in the instant case, as shown
in Mr. Justice NORTH's dissent, indicate that this
defendant did not have even a ''summary hearing.''
A ''hearing'' means that the defendant be given an
opportunity to be heard, the proceeding being anal-
ogous to an order directing the defendant to show
cause why his probation should not be revoked. In
this case, the defendant was not given a chance to
be heard. The probation was summarily revoked
without that opportunity. For that reason, I con-
cur with Mr. Justice SHARPE for reversal.

NORTH, J. (*dissenting in part*). The conclusion of
Mr. Justice SHARPE that the trial judge was in
error in revoking probation of appellant and there-
upon imposing sentence is not one in which I can
concur. From the record, it is obvious that the
trial judge was thoroughly and reliably advised of
all the facts and circumstances, in consequence of
which he revoked appellant's probation and passed
sentence. Justice SHARPE rightly affirms defendant's
conviction. The obvious result of vacating the sen-
tence and the order revoking probation will merely
be a reappearance of defendant before the trial
court and a re-entry of the same orders, supple-
mented by a somewhat more detailed record of the
facts and circumstances which abundantly justified
the disposition already made of appellant's case by
the trial judge. In short, the record discloses no
prejudicial error.

No claim is made that appellant was not brought
before the trial court charged informally with vio-
lation of the conditions of his five-year probation
which the court had ordered four months earlier.
Instead, appellant's contention is that he did not
have a ''hearing'' before the trial court at the time

his probation was revoked. The statute in part provides:

"All probation orders shall be revocable and terminable after *summary hearing* for any violation by the probationer of any of the conditions of his probation. * * * In case such probation order is terminated and revoked, the court may proceed to sentence such probationer in the same manner and to the same penalty as it might have done if such probation order had never been made." 3 Comp. Laws 1929, 17374 (Stat. Ann. § 28.1134.)

As to whether defendant had a "summary hearing" at the time he was brought before the trial judge charged with violation of his probation, and immediately following which sentence was imposed, the record discloses the following took place:

"*The Court:* Roger Myers, have you anything to say now why the court should not set aside the order entered on November 21, 1941, putting you on probation for five years for statutory rape?
"*Defendant:* I am not guilty, sir.
"*The Court:* You are not guilty?
"*Defendant:* No, sir.
"*Mr. Crossley (counsel for defendant)*: * * * There are certain circumstances which I would like to call to your honor's attention. It seems, your honor, that this man was put on probation. * * * I didn't have the file before me. Now there is a second charge.
"*The Court:* Statutory rape on a 15-year-old girl, the mother telling him her age and he went up to the house and took her out in spite of the mother.
"*Mr. Crossley:* Now, it has been intimated rather strongly to our office that there is doubt as to his guilt of this second crime. I only want to bring to your honor's attention this, and then go; and it seems to me he ought to be given a trial. * * *

"*The Court*: The young man standing at your right this afternoon, Mr. Crossley, knows just exactly the conditions (of probation).

"*Q.* Well, you remember our talk, Roger, on November 21st, the day I sentenced Dubey to Jackson prison for 10 to 20 years; you remember that?

"*The Defendant:* Yes, sir.     *     *     *

"*The Court:* This is not for the record because it has already been taken down, but I am going to read it to you again.

(The Court reads the record of the previous sentence of November 21, 1941.)

"*The Defendant:* I haven't failed you.

"*The Court:* You are here. I even permitted you to go and marry a girl that you got into trouble before you raped this girl out on Plymouth highway; I even set that aside after I found it out; I didn't know it at the time or that might have affected my putting you on probation. But I let you marry that little girl, to give her a name and a name to her baby, to which she is now struggling to give life out at the Salvation Army hospital. And what do you do? You go up to this 15-year-old girl's home, and in spite of the protests of her mother, you take her to the apartment at the corner of Fifteenth and Lafayette and have intercourse with her there, while the girl you gave your name to—what did you say in the prosecuting attorney's office about your own wife?

"I paid my respects to Dubey during the course of that trial; I thought I was making a mistake. I watched you and I thought you were either a very smart young man or you had been a victim of bad companionship which would entitle you to the consideration of the court and every attaché of the court. I thought you were an honest boy; I gave you the benefit of the doubt. I made a mistake; you haven't done a day's work since I put you on probation.

"*The Defendant:* I had a job for today.

"*The Court:* It wasn't the kind of work that is worthwhile. There is no use going over it. I told you I would keep my promise. The order of the court placing you on probation, which of course had as one of its provisions that you would never violate a law or an ordinance, will be set aside."

It seems to me that the above appearance before the court of defendant, represented by counsel, was a substantial compliance with the statutory requirement of a "summary hearing" incident to revocation of probation. In the first instance, probation is wholly discretionary with the trial judge. *People* v. *Fisher,* 237 Mich. 504. And in making his determination the trial judge is not bound to act only upon a record of testimony taken in the usual formal manner. Instead, he may rightfully consider reports of probation officers and other information of like reliable character. *People* v. *Williams,* 225 Mich. 133. And since the statute pertinent to revocation of probation does not require a formal hearing, but instead only a "summary hearing" it should be held that the proceeding incident to revocation is of the same type as the proceeding contemplated by the statute in placing a convicted person on probation in the first instance. The statute governing probation and revocation thereof does not contemplate a second trial of the accused.

In the instant case an able and painstaking trial judge has disposed of the question under consideration in substantial compliance with the statutory requirement, as is disclosed by the record when fairly construed. Notwithstanding appellant's contention to the contrary, his probation was not terminated in violation of the procedural requirements of the statute, nor was he thereby deprived of his

right to due process of law in violation of either the State or Federal constitutional provisions. The conviction, the order revoking defendant's probation, and the sentence imposed should be affirmed.

BUTZEL, J., concurred with NORTH, J.