**Robert H. MOTTRAM**

v.

**STATE of Maine et al.**

Supreme Judicial Court of Maine.

Aug. 21, 1967.

---

Casper Tevanian, Portland, for appellant.

John W. Benoit, Asst. Atty. Gen., Augusta, for appellee.

Julius B. Levine, Waterville, filed brief, Amicus Curiae.

Before WILLIAMSON, C. J., and TAPLEY, MARDEN and DUFRESNE, JJ.

DUFRESNE, Justice.

On appeal from the denial by a single Justice sitting in the Superior Court of Robert H. Mottram's petition for the writ of habeas corpus. The petitioner was convicted of the crime of grand larceny at the September term of the Cumberland County Superior Court in 1960 and sentenced to State Prison. On November 15, 1963 he was released from the penal institution on parole granted by the State Probation and Parole Board (the Board). On January 21, 1965 the State Director of Probation and Parole issued a warrant for the arrest and return of Mottram to Maine State Prison upon proper written authority from a member of the Board. Arrested on February 12, 1965 and returned to prison, Mottram was given a hearing before the Board at the prison on February 26, 1965, and the Board determined that he had violated the terms and conditions of his parole and ordered the same revoked, fixing his new eligibility date for parole hearing and remanding him to the institution to serve the unexpired portion of his sentence. Petitioner claims that it was error for the single Justice to deny his petition for the writ of habeas corpus and argues in support of his contention that the Board's action in revoking his parole and remanding him to the prison for service of the unexpired portion of his sentence was illegal. He first challenges the Board's authority to act on the ground that the warrant of arrest was without seal and did not contain specific allegations of the claimed parole violation. He next contends that he was not accorded a hearing according to law, in that he was not given a formal list of charges of violation of parole prior to hearing, nor was he given the opportunity at the hearing to present witnesses on his behalf or to have counsel representation.

After dismissing the first point as being without merit, the single Justice made the following findings:

"I find that when the petitioner appeared before the Board on February 26, 1965 the proceedings were informal. The petitioner obviously viewed this "hearing" as in the nature of a trial and in effect demanded the usual formalities attendant thereon such as a written presentation of the charges of parole violation, confrontation by his "accusers" and the like. The charges were not formalized. The Board verbally asked for his version of certain incidents which had come to their attention and in each instance the petitioner responded either by denial or excuse. I find that by means of this interview method the petitioner was made aware of the matters which were under consideration as possible reasons for revocation and was fully heard as to each. The petitioner was offered the opportunity to present witnesses but he declined on the ground that he had not been formally charged with specific parole violations. In general the petitioner demanded the "right to counsel". He was not accompanied by counsel of his own choice nor did he request that any specifically named attorney be permitted to be present. Neither did he request that the Board appoint counsel to represent him. * * * In the instant case the petitioner appeared, full inquiry was made and he was "heard" as to aspects of his conduct which bore directly upon the advisability of continued parole. In my view the "hearing" requirement of this particular statute was thereby satisfied."

It was further candidly admitted by the State Director that a parolee accused of parole violation is not given a written list of the charges upon which the Board is

expected to act in determining whether parole has been violated, but that usually he is advised orally at the time of his arrest of the reasons therefor; further that the hearing by the Board consists in a member of the Board reading the respective charges against the parolee and inquiring of him in each instance whether he is guilty of the conduct charged against him and whether in his opinion he believes that he has violated his parole. It has been the policy of the Board to give the parolee full opportunity to explain and excuse his conduct but the Board has not permitted at the institutional hearing witnesses on behalf of the parolee nor representation by counsel.

The issue arises by reason of the provisions of 34 M.R.S.A. § 1675 which reads as follows:

"Violation of parole.

When a parolee violates a condition of his parole or violates the law, a member of the board may authorize the director in writing to issue a warrant for his arrest. A probation-parole officer, or any other law enforcement officer within the State authorized to make arrests, may arrest the parolee on the warrant and return him to the institution from which he was paroled. At its next meeting at that institution, *the board shall hold a hearing. The parolee is entitled to appear and be heard.* If the board, after hearing, finds that the parolee has violated his parole or the law, it shall revoke his parole, set the length of time he shall serve of the unexpired portion of his sentence before he can again be eligible for hearing by the board, and remand him to the institution from which he was released; * * *

1. Forfeits deductions. Upon revocation of parole by the board the prisoner or inmate forfeits any deductions for good behavior earned while on parole." (Emphasis supplied)

In final analysis, the issue is, what type of hearing did the Legislature have in mind

in parole violation proceedings and what rights did it grant the parolee when it legislated that he is entitled to appear and be heard.

Initially, let us consider the status of the parolee while on parole. Although released from the institution where his sentence demanded his detention, the paroled prisoner remains under the custody of the warden or superintendent, and is serving the unexpired portion of his sentence, less deductions for good behavior, but is under the immediate supervision of and subject to the rules and regulations of the board or any special conditions of parole imposed by the board. 34 M.R.S.A. § 1671.

■ A parolee has no constitutional right to a hearing on revocation of parole, and such a revocation without notice and hearing does not constitute a denial of constitutional due process. Martin v. State Board of Parole, 1966, 350 Mass. 210, 213 N.E.2d 925; Jones v. Rivers, 4th Cir., 1964, 338 F.2d 862 at page 874; Curtis v. Bennett, 1964, 256 Iowa 1164, 131 N.W.2d 1; Ex parte Anderson, 191 Or. 409, 229 P.2d 633, 230 P.2d 770, 29 A.L.R.2d 1051 (Cf. Anno. at pages 1074 et seq.); Ex parte Tabor, 173 Kan. 686, 250 P.2d 793; Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963).

■ Parole however is a legislative program of rehabilitation and restoration of persons convicted of crime to useful membership in society. The purpose of the law is to offer the institutionalized convict the opportunity to make good on his own outside the prison walls but under the immediate supervision of the probation-parole officer to whom the parolee must report and whose guidance he may seek at all times. It is the duty of the probation-parole officer not only to keep informed of the conduct and condition of each person placed under his supervision but he is directed to use suitable methods to encourage him to improve his conduct and condition. 34 M.R.S.A. § 1502(4). To the extent that the parolee must strictly

observe all the conditions of his parole and remain within the area of permitted enlargement of the prison walls consistent with effective supervision, he is not a totally free man. The Legislature, in adopting the parole system and providing a rehabilitation program for prisoners undoubtedly took into consideration that at this level the prisoner's guilt had been established, presumably after full compliance with all the constitutional requirements of due process, and that in setting up the mechanics for parole revocation it could rest the same upon the absolute discretion of the Parole Board or it could circumscribe the retaking of a paroled prisoner by such procedural requirements as it deemed necessary in its own uncontrolled wisdom. In short, our lawmakers knew that parolees, if they violated their parole, were not entitled to the same procedural safeguards constitutionally necessary in the case of persons accused of crime.

As stated in State v. Fazzano, 1963, 96 R.I. 472, 194 A.2d 680, at page 684:

"A person imprisoned by a court is turned over to an administrative agency for the execution of the sentence. The imprisonment can, if so authorized by the legislature, be ameliorated by allowing it to be served beyond the confines of the penal institution on parole. * * * This is not a right of a prisoner, but accrues to him through legislative grace and can be withheld or withdrawn by the legislature at will. As part of the act of grace it is within the legislative power to attach conditions to the grant of parole and to provide for the administration thereof. * * * Courts have no power to determine the penological system; this is within the exclusive jurisdiction of the legislature. * * * As part of its power the legislature can grant to the parole board the exclusive right to determine if a parole permit shall be revoked and any such revocation by the parole board made within the limits

of the legislative authority given to it cannot be attacked." See also, Commonwealth ex rel. Banks v. Cain, (1942) 345 Pa. 581, 28 A.2d 897, 143 A.L.R. 1473; Hiatt v. Compagna, U.S.C.A., 5th Cir., (1949), 178 F.2d 42.

We agree with the great weight of judicial authority that the grant, revocation and reinstatement of parole are within the exclusive jurisdiction of the Parole Board subject to such procedural restrictions within which our Legislature circumscribed the Board's powers. In other words, the rights of the parolee are such as our lawmakers intended to establish within the rehabilitation process and our instant problem is not one of constitutional requirement but of statutory interpretation. We must therefore ascertain what operative procedures were contemplated as regards parolee's violations of parole or the law when the Legislature said that after the parolee's arrest therefor, "at its next meeting at that institution, the board *shall hold* a hearing. The parolee is entitled to appear and be heard. If the board, after hearing, finds that the parolee has violated his parole or the law, it *shall revoke* his parole" etc.

Under related federal legislation directing that the prisoner retaken upon the Parole Board's warrant "shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board," some authorities such as Hyser v. Reed, 1963, 115 U.S.App.D.C. 254, 318 F.2d 225 and Jones v. Rivers, 4th Cir., 1964, 338 F.2d 862, have construed the act of Congress to mean that the parolee must be informed prior to hearing of his right to be represented by retained counsel and of the nature of the violations claimed against him, and that at the hearing he must be given the opportunity to produce and present voluntary witnesses. Cf. Hiatt v. Compagna, 1949, 5th Cir., 178 F.2d 42, affirmed by equally divided Court, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639, reh. den. 340 U.S. 907, 71 S.Ct. 277, 95 L.Ed.

656; Washington v. Hagan, 1960, 3rd Cir., 287 F.2d 332.

In Benson v. Inhabitants of Town of Newfield, 136 Me. 23, 1 A.2d 227, our Court has said where the statutory provision read *"after due notice and investigation,* they (superintending school committees) shall dismiss any teacher, although having the requisite certificate, who proves unfit to teach, or whose services they deem unprofitable to the school" [emphasis supplied], that there was no compliance with statutory prerequisites since the dismissed teacher received no notice of the date of the meeting on the dismissal, no written charges were preferred against him and he was neither present nor represented by counsel. Thus, our Court in *Benson,* as it had previously adjudicated in Hopkins v. Inhabitants of Bucksport, 1920, 119 Me. 437, 111 A. 734, construed the legislative terminology of due notice and investigation in teacher dismissals to mean a quasi judicial hearing to determine the existence of cause for dismissal. Such cases however are not controlling in the instant situation, since they affect private contractual property rights and obligations protected by Amendment V and Amendment XIV § 1 of the Constitution of the United States, against deprivation without due process of law. "[N]or [shall he] be deprived of life, liberty, or property, without due process of law". Amendment V. "[N]or shall any State deprive any person of life, liberty, or property, without due process of law". Amendment XIV. But in the case before us, the parolee has no property right in the enjoyment of his liberty on parole outside the prison walls, as parole is a matter of grace. We have noted above that parole revocation is not affected by the constitutional "due process" clause.

As indicated in Duncan, Appl't v. Ulmer, 1963, 159 Me. 266, 191 A.2d 617, courts generally are reluctant to interfere with penal control and management. The same can be said regarding the administration of the parole law which is but an ameliorated form of the penal system. The intended rehabilitation of the prisoner in parole inherently requires supervision of his activities in society, the maintenance of the disciplinary restrictions on his liberty imposed as a condition thereof and the speedy withdrawal "for the common welfare" of the convict from society upon violation of the terms of his parole without any constitutional restraint provided the statutory requirements are complied with and the parolee is allowed the legislative privilege to appear before the Board and be heard by it in explanation or repudiation of the accusation against him. The *Hyser* rule however does not impress us as an indispensable intendment of legislative design. Rather, we equate the reference right to appear before the Board and be heard with the ancient common law privilege extended in certain jurisdictions in capital cases whereby the accused otherwise disqualified was allowed to make a statement to the jury and thus tell his story in exculpation, not on oath and not as a witness, but in the guise of an address or argument. See, Wigmore on Evidence (2d Ed.) § 579; Commonwealth v. Stewart, 1926, 255 Mass. 9, 151 N.E. 74, 77, 44 A.L. R. 579; 23 C.J.S. Criminal Law § 1026; 53 Am.Jur. Trial, §§ 44 and 795.

Many substantial reasons may be advanced for our interpretation of the parolee's statutory right before the Board as merely a privilege to appear and have the opportunity to address the Board in exculpation or excuse. In the first place, we must bear in mind that the Legislature has delegated to the same agency, to wit, the Probation and Parole Board, the revocation of parole as well as the original grant thereof; where no specific type of hearing was indicated in either case, should we not presume uniformity of concept in the legislative mind whether the Board acts in a case of original parole or of revocation thereof?

"The board *may grant a parole* from any state penal or correctional institution *when a prisoner* or inmate *becomes eligi-*

*ble for a hearing* by the State Probation and Parole Board. It may revoke a parole [after hearing, § 1675] when a condition of the parole is violated." 34 M.R.S.A. § 1671.

Nobody has ever claimed, nor is it presently contended, that a prisoner eligible for a hearing in an initial potential grant of parole, was entitled to a quasi judicial hearing thereon. It must be conceded that at that stage in the administration of the parole law where the sole question before the Board is whether the prisoner in the judgment of the Board is a good parole risk, the statutory hearing presupposed for that determination was an informal conference between the prisoner and the Board, more of the so-called interview type, rather than a judicial sitting with full technical ritual of a trial.

We note that the Legislature provided for the appointment of two of the three members of the Board to be made "from persons with special training or experience in law, sociology, psychology or related branches of social science." 34 M.R.S.A. § 1551. It granted the Board, in the administration of the parole law, in general terms broad powers and duties to "formulate policies, adopt regulations, *establish* organizational and *operational procedures*, and exercise general supervision." [Emphasis mine]. 34 M.R.S.A. § 1552(1). It invested the State Director of Probation and Parole with the general powers and duties "[t]o establish uniform methods and procedures in the administration of probation and parole". 34 M.R.S.A. § 1592(5). Under these broad legislative duties and powers, the Parole Board has established and maintained since the general revision of the probation and parole law by the Legislature in 1957, [P.L.1957, c. 387], the conference or interview type of hearing under the law, whether in the grant or the revocation of parole.

"The construction which has been placed upon a statute by the officers or governmental department charged with carrying out the provisions of the law is to be accorded due consideration by the courts in construing the statute. 25 R.C.L. 957. In case of doubt as to the meaning of a statute it is well settled that the courts may resort to contemporaneous construction, and it has been said that the best construction of a statute is that which it has received from contemporary authority." State v. Boston & M. Railroad Company, 1923, 123 Me. 48, 121 A. 541.

Although not controlling, State of Maine v. York Utilities Co., 1946, 142 Me. 40, 45 A.2d 634, the interpretation of the legislative terminology "the parolee is entitled to appear and be heard" as consistently and uniformly given to the statute by the Probation and Parole Board is a convincing guide to the Legislature's intent.

To place any other construction on the statute would be subversive of its real purpose and might well result in infinite difficulty for the Board. Indeed, if the action of the Board in determining that a paroled convict has been a parole violator and should be re-imprisoned could not be taken until after a judicial inquiry, as distinguished from an administrative investigation, the resulting burdens of administration on the Board and its desire to protect society would undoubtedly discourage the Board from granting many paroles that it otherwise would grant. Such negative attitude on the part of the Board would defeat the whole purpose of the parole law which is to give deserving convicted persons as early as the law will permit the opportunity of self-help in their own rehabilitation outside the strict regimentation of the penal institution. See In re Varner, 1957, 166 Ohio St. 340, 142 N.E.2d 846 at page 849.

Furthermore, where the paroled prisoner under our modern release procedures is under the immediate supervision of the Board's personnel and thus under the guidance and observation of trained officials and there exists real opportunity for the supervision of the conduct of the prisoner and the acquisition of intimate knowledge

concerning his character and the progress or retrogression of his rehabilitation, the probability of informed action upon administrative investigation of alleged parole violations is such that there is little need today for the judicial type of hearing in parole revocations. See Ex parte Anderson, 1951, 191 Or. 409, 229 P.2d 633 at page 641, 230 P.2d 770, 29 A.L.R.2d 1051.

Also, the Board in its supervision of the paroled convict, and in its effort to protect society against a recalcitrant parolee must at times rely, in order to determine whether or not the convict should be declared a parole violator and again imprisoned, upon secret investigations. In many instances, potential witnesses knowledgeable of facts which have escaped the observation of the parole officer are fearful of testifying publicly against a paroled convict. If revocation of parole depended upon a full judicial hearing, then undeserving parolees would roam the streets with impunity for their breach of faith long after their freedom privileges should have been revoked for factual violations of the terms of their parole.

There is no stronger deterrent against parole violations than the knowledge of the parolee that any violation of the terms of his parole shall result in his immediate and sure return to his cell behind prison walls without delay or legal intricacies.

 Furthermore, the Board is given no power to issue subpoenaes nor swear witnesses. The Act contemplates speedy determination of parole violations as it directs that the board shall hold a hearing thereon at its next meeting at the institution to which the parolee was returned upon his arrest and from which he was paroled, no mention being made of continuances to be granted to the parolee for preparation of his defense. No appeal has been provided from the Board's determination of violation of parole. The absence of these accessorial provisions usually associated with a judicial hearing support our view and those of the Justice below to the effect

that Mottram was provided with the type of hearing which our statute, 34 M.R.S.A. § 1675, requires when he was granted the privilege to appear and address the Board in excuse or exculpation of the charges made against him respecting violation of his parole. The law contemplates that the Board shall be guided by the information which has become available to it through its own investigation procedures and is not to be circumscribed by evidence to be produced at a judicial hearing. Revocation of parole is an administrative function under our law rather than a quasi court procedure.

 The warrant for the petitioner's arrest for violation of parole need not be under seal as contended for by him, since the statute does not prescribe the use of a seal by the Board. We need not decide whether the Board in its adoption of operational procedures under 34 M.R.S.A. § 1552 (1) may provide for the sealing of its warrant of arrest. The instant warrant was issued according to the strict dictates of the statute and was a sufficient voucher that the prisoner's pass to freedom on parole had been lifted as well as authority for safe conduct to the institution from which he had been paroled. A parolee is under the custody of the warden while on parole as well as after his arrest for violation. Such a warrant issued by the Parole Board for the arrest of a paroled prisoner is not to be judged by the same standards as a warrant for the arrest of a person merely charged with crime. United States ex rel. Nicholson v. Dillard, 4th Cir. (1939), 102 F.2d 94. Furthermore, the warrant only serves to hold the parolee for the Board pending the hearing at which he is entitled to appear and be heard as we have interpreted that statutory language, but once the hearing has been had, then the warrant has become unimportant. Hiatt v. Compagna, 5th Cir. (1949), 178 F.2d 42. Mere irregularity in the manner and circumstances of the arrest is not a sufficient basis for the writ of habeas corpus, where the Board had jurisdiction of the cause and the person.

Jacques v. Lassiter (1958), 154 Me. 84, 143 A.2d 747.

The single Justice in denying the petition for the writ of habeas corpus indicated that he entertained grave doubts as to whether the remedy afforded by 14 M.R.S.A. § 5502 is appropriate or available to the petitioner to obtain his discharge from imprisonment absolute or conditional, when the claim of illegal restraint is based solely upon a collateral attack on the revocation of parole by the Parole Board. We entertain no such concern.

While on parole, the parolee in the instant case remained under the custody of the warden of the state prison from which he was released to parole by the Parole Board, and during his parole, although under the custody of the warden, he was under the immediate supervision of and subject to the rules and regulations of the Board or any special conditions of parole that may have been imposed by the Board. 34 M.R.S.A. § 1671(2). Although outside the prison walls, Mottram continued to serve his sentence, 34 M.R.S.A. § 1671(1), but was accountable with every other citizen for violation of law, Libby, Jr. v. State of Maine, et al., 161 Me. 317, 211 A.2d 586, and accountable to the Board for infraction of the conditions of parole. Upon revocation of parole after hearing, the parolee resumes his former status of a person convicted of crime and incarcerated thereunder; although his incarceration must be related to his original sentence, his present confinement or imprisonment in the institution under the original sentence, as distinguished from the serving of his sentence on the outside, can only be legitimatized through action of the Board in lawfully revoking his parole.

Revocation of parole by the Board without a hearing, or after hearing at which the parolee was not allowed to appear or at which he was not afforded the opportunity to be heard by addressing the Board concerning matters relevant to the potential revocation of his parole, would be in express violation of his statutory rights, make his remand to the institution unlawful and taint his confinement therein under the original sentence with illegality within the meaning of 14 M.R.S.A. § 5502, which says that:

"Any person convicted of crime and incarcerated thereunder including any person committed as a juvenile offender, or released on probation, or paroled from a sentence thereof, or fined, *who claims that he is illegally imprisoned*, * * * may institute a petition for a writ of habeas corpus seeking release from an illegal imprisonment, * * *" [Emphasis supplied]

Such interpretation is consistent with the legislative purpose to provide a single exclusive remedy for all collateral attacks on judgments of conviction post conviction as its title indicates. Under 14 M.R.S.A. § 5505, the sitting justice in post-conviction habeas corpus is given broad powers necessary to meet a variety of circumstances in that he can make such orders as he deems appropriate to his findings in the case and the statute says, "including, *but not limited to,* the release of the petitioner, corrections in error of law appearing on the face of the record, resentencing, or remanding for resentencing if an erroneous or illegal sentence be found to have been entered, setting aside the plea, conviction and sentence." This indicates a legislative intent to include relief beyond the sphere of remedial action provided by the previous habeas corpus, writ of error and common law coram nobis proceedings, which our statutory post-conviction habeas corpus was designed to supplant.

█ We hold that our post-conviction habeas corpus is the proper remedy to test the legality of a parolee's imprisonment on the alleged claim that the Board acted illegally in revoking his parole without the hearing required by law.

█ Under 14 M.R.S.A. § 5522, our post-conviction habeas corpus law provides that "[w]hen it appears that the party is detained on any process under which any

other person has an interest in continuing such imprisonment or restraint, the party shall not be discharged until notice has been given to such other person or his attorney, if within the State or within 30 miles of the place of examination, to appear and object, if he sees cause. If imprisoned on any criminal accusation, he shall not be discharged until sufficient notice has been given to the Attorney General or other attorney for the State that he may appear and object, if he thinks fit." The Parole Board has such interest in the parolee's continued incarceration upon revocation of parole that specific notice to the Board should be given in all post conviction habeas corpus proceedings where the action of the Board in revoking parole is challenged. In the instant case, although the record is silent as to any such notice the Board participated in the proceedings, its director testified and the Attorney General of the State of Maine fully presented its objections to Mottram's release. Under the circumstances of the instant case, we rule that the statute was satisfied in that respect.

The entry will be

Appeal denied.

WEBBER, J., did not sit.

RUDMAN, J., sat at argument, but did not participate in the decision.