**Alton GORDON**

v.

**Garrell MULLANEY, Warden Maine State Prison, State of Maine.**

Supreme Judicial Court of Maine.

April 8, 1974.

Peter Avery Anderson, Bangor, Knight & Cohen, by John L. Knight, Rockland, for plaintiff.

William J. Kelleher, Asst. Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

On report.

Acting pursuant to 14 M.R.S.A. § 5505, Alton Gordon instituted a petition seeking post-conviction relief on the premise that his present incarceration in the Maine State Prison as a parole violator was the result of illegal action by the State Parole Board.

The petitioner and the respondent, in lieu of a hearing, filed with the Justice as-

signed to the case an agreed statement of facts.[1] Thereafter, with the agreement of both parties, the Justice reported the case to the Law Court. Rule 72(b), M.R.C.P.

The State Parole Board was created in 1971 by the enactment of 34 M.R.S.A. § 1551. Among the several duties assigned to this board was the power to "revoke parole when warranted due to parole violation." 34 M.R.S.A. § 1552(1)(B). In executing this mandate the legislature determined that a parolee alleged to have violated the conditions of his parole, or to have violated the law, was entitled to appear and be heard by the board. 34 M.R.S.A. § 1675.[2]

Mindful of the Maine constitutional provision that "[n]o person shall be deprived of life, liberty or property without due process of law," [3] we must determine from the agreed statement of facts whether the petitioner was accorded that type of a "hearing" which is mandated by Section 1675, prior to being deprived of his liberty as a parole violator.

Although the agreed statement of facts recites that "a parole violation hearing was held," the stipulated facts do not reveal that this hearing was anything but a mere formality. Limiting our observation to items 5 and 7 of the agreed statement (n. 1, *supra*), it is clear that the petitioner was not allowed to either confront or cross-examine any witnesses if, in fact, any witnesses were present, nor despite his denial of parole violation was he given any opportunity to present evidence to prove his innocence.

Inherent in a legally cognizable hearing consistent with due process is the opportunity to be heard, and this goes beyond mere presence before the body assigned to conduct the hearing. People v. Myers, 306 Mich. 100, 10 N.W.2d 323 (1943); *see also* People v. Pennington, 66 Cal.2d 508, 58 Cal.Rptr. 374, 426 P.2d 942 (1967); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Likewise, it seems self-evident that the opportunity

---

1. "Petitioner and Respondents stipulate and agree to the following:

    1) He was convicted of breaking, entering and larceny in the nighttime by the Superior Court for Penobscot County on March 12, 1965;

    2) He was sentenced to a term of four to ten years in the Maine State Prison at Thomaston, Maine;

    3) On November 14, 1968, Petitioner was released on parole from said institution;

    4) On or about May 18, 1972, Petitioner was arrested by the guards at the Maine State Prison and held on a parole violation hold;

    5) The facts alleged by the state to constitute a parole violation are disputed by the Petitioner. Petitioner denies that he in fact violated the conditions of his parole;

    6) On May 25, 1972, a parole violation hearing was held at the Maine State Prison in Thomaston. At that hearing Petitioner was neither advised that he had a right to counsel nor was he represented by counsel. It is the policy of the Maine State Probation and Parole Board to deny to alleged parole violators the right to be represented by an attorney;

    7) At the same hearing Petitioner was not given written notice of the acts alleged to have been committed by him which constituted a violation of parole. He was not allowed to confront and cross-examine the witnesses who had furnished evidence against him nor was he permitted to present evidence or witnesses on his own behalf;

    8) Subsequent to the hearing, Petitioner received notification from the board which stated that he was found in violation of parole and that his parole was revoked. The decision did not specify what evidence the board had relied upon in coming to a decision or the reason for revoking parole;

    9) Petitioner commenced this action by filing a Petition for Writ of Habeas Corpus on September 19, 1972."

2. "When a parolee violates a condition of his parole or violates the law, the director may issue a warrant for his arrest. A probation-parole officer, or any other law enforcement officer within the State authorized to make arrests, may arrest the parolee on the warrant and return him to the institution from which he was paroled. At its next meeting at that institution, *the board shall hold a hearing. The parolee is entitled to appear and be heard. If the board, after hearing,* finds that the parolee has violated his parole or the law, it shall revoke his parole, set the length of time he shall serve of the unexpired portion of his sentence before he can again be eligible for hearing by the board, and remand him to the institution from which he was released . . . . ." (Emphasis supplied.)

3. Constitution of Maine, Art. I, § 6-A.

to be heard must include the right to support a claim of innocence by the introduction of testimony and by argumentation. Seibold v. State, 287 Ala. 549, 253 So.2d 302 (1970); Davis v. Davis, 103 N.J.Super. 284, 247 A.2d 139 (1968); State v. Milhollan, 50 N.D. 184, 195 N.W. 292 (1923).

In holding that post-conviction habeas corpus (14 M.R.S.A. § 5502) "is the proper remedy to test the legality of a parolee's imprisonment," we said in Mottram v. State, 232 A.2d 809, 818 Me. (1967)

"Revocation of parole by the Board *without a hearing,* or after hearing at which the parolee was not allowed to appear or *at which he was not afforded the opportunity to be heard by addressing the Board concerning matters relevant to the potential revocation of his parole,* would be in express violation of his statutory rights . . . . " (Emphasis supplied.)

Applying these rules to the stipulated facts, it becomes patently obvious that the effect of the action by the State Parole Board was to revoke petitioner's parole without any meaningful hearing, thus violating the provisions of Section 1675. We, therefore, must hold that the action of the State Parole Board revoking the petitioner's parole, being in violation of his statutory rights, was without legal significance.

Although the petitioner has argued that two recent decisions of the United States Supreme Court control his right to the relief requested, we do not find it necessary to base our decision on these rulings. Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 33 L.Ed.2d 484 (1972), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), are both addressed to the constitutional rights of those alleged to be in violation of probation or parole. These decisions postdate the petitioner's alleged parole violation and the "hearing" before the State Parole Board. While it is clear that petitioner was not given the opportunity to be represented by counsel or to have an otherwise meaningful hearing, we do not feel it necessary to determine whether *Morrissey* and *Scarpelli* should be given retroactive application because we have already determined that the type of hearing afforded the petitioner did not comport with our own statutory requirements.

Since the facts now before us are readily distinguishable from those in *Mottram,* we do not feel required to comment on the continuing viability of *Mottram* in view of the holdings in *Morrissey* and *Scarpelli.* In contradistinction to the record before us, in *Mottram* the facts underlying the claim of parole violation were, at least informally, made known, the opportunity to present defense witnesses, although offered, was declined and no request for counsel was made. Should we conclude that either *Morrissey* or *Scarpelli*[4] su-

4. We are aware of the fact that the State Parole Board is now cognizant of these holdings. Effective January 1, 1974, this board adopted the following "Interim Procedures for Parole Revocation Proceedings":

"I. STATEMENT OF PURPOSE

These procedures are designed to comply with the letter and spirit of Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593 (1972) and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756 (1973) in providing procedural fairness to parolees charged with violations of parole conditions. They constitute a first approximation of the Board's perception of procedural fairness. The Board intends to revise them as experience and legal requirements dictate.

II. NOTICE TO, AND ELECTION BY, PAROLEE

Whenever the case of a parolee charged with parole violation is referred to the Parole Board, the parolee will be given the Notice appended hereto as Appendix A. The parolee will be required to make the elections designated on Page 2 of the Notice, viz., elections as to the presence of adverse or favorable witnesses and the assistance of counsel. If the parolee exercises his right to counsel, he may, after consultation with counsel, change his elections as to the presence of witnesses.

III. WITNESSES

A. *Adverse Witnesses*

If the parolee elects to be confronted by adverse witnesses, he will be given the names

persedes that segment of *Mottram* addressed to constitutional rights, such a decision would be not only completely gratuitous on the record before us, but rendered unnecessary in view of our conclusion that the petitioner's statutory rights had been violated.

Neither do we need to reconsider our holding in Stubbs v. State, 281 A.2d 134 (Me.1971), since the basic issue there determined was that "a finding of parole violation by the Parole Board, is not reviewable in a habeas corpus (post-conviction) proceeding." *Id.* at 136. If, following a proper hearing as mandated by Section 1675, a factual determination is made by the Parole Board establishing a parole violation, *Stubbs* is still valid authority for the nonreviewability of such a finding.

In accordance with the order reporting this case to the Law Court, the case is remanded to the Superior Court for entry of the following judgment:

Petitioner ordered released.

All Justices concurring.

of those witnesses at least 3 days prior to the Board hearing.

B. *Parolee's Witnesses*

If the parolee elects the presence of witnesses on his behalf, the Board will undertake, upon the parolee's request, to notify them of the hearing.

IV. HEARING

The hearing before the parole board will be in the following two stages:

1) *Adjudicatory hearing*, at which the Board will decide whether or not the parolee has violated one or more of the conditions of his parole; and

2) if violation is found, the *dispositional hearing*, at which the Board will decide what disposition to make of the parolee's case.

V. ADJUDICATORY HEARING

A. Proof of violation

1. Proof of a parolee's violation of the criminal law shall be sufficient if an official record of his conviction is received into evidence.

2. If the parolee elects confrontation by adverse witnesses, only those witnesses designated pursuant to Paragraph III.A. above shall be permitted to testify. Witnesses

shall be subject to examination by members of the Parole Board and the parolee or his counsel.

3. If the parolee waives confrontation by adverse witnesses, official parole violation reports and other official records may constitute proof of violation.

B. Defense Presentation

Defense witnesses shall be subject to examination by the parolee or his counsel, members of the Parole Board and members of the Division of Probation and Parole.

C. Adjudication

After the charging and defense presentations have been concluded, the Parole Board shall announce its finding as to whether a violation of parole conditions has been committed. If the Board so finds, it shall give its reasons orally and in writing to the parolee.

VI. DISPOSITIONAL HEARING

. . . . "

It is unnecessary for us to comment on whether the adoption of these procedures does, in fact, comply with the standards enunciated in *Morrissey* and *Scarpelli*.