RAYMOND R. COLLINS
*vs.*
STATE OF MAINE, ET AL.

Androscoggin.   Opinion, October 27, 1965.

*William Cohen,* for Plaintiff.

*John W. Benoit, Asst. Atty. Gen.,* for Defendants.

SITTING: WILLIAMSON, C. J., TAPLEY, SULLIVAN, MARDEN, RUDMAN, JJ. WEBBER, J., did not sit.

MARDEN, J. On appeal from denial of relief under post-conviction habeas corpus proceeding.

On January 12, 1961 petitioner was sentenced to serve a term of from two and one-half to five years in the State Prison. On June 22, 1964 he was released to parole.

On June 25, 1964 an incident occurred in Lewiston, Maine, which incident became the basis of a criminal complaint heard by the Lewiston Municipal Court on June 30, 1964. However, on June 25, 1964, upon evidence classified as "satisfactory" that he had violated the terms and conditions of his parole, the State Probation and Parole Board (Board) authorized the Director of that Board to issue a warrant for his arrest and return to the institution from which he was released. By instrument of the same date, the Director issued such a warrant.

The record does not reveal whether petitioner was arrested on June 25, 1964 by the parole officer and held by virtue of the parole warrant pending action by the Lewiston authorities on June 30, 1964 or whether he was arrested on June 25, 1964 by the Lewiston police and held until action by the Lewiston Municipal Court on June 30, 1964. Petitioner implies that the former statement reflects the facts. Because the June 25, 1964 incident involved an assault upon an officer it is highly improbable that he was

not forthwith arrested and thereafter held by the Lewiston officers until court action on June 30, 1964.

On June 30, 1964 a complaint was filed with the Lewiston Municipal Court against the petitioner alleging an offense of assault on June 25, 1964. He was arraigned on the same date, entered a plea of guilty and was sentenced to serve 60 days in the county jail. On August 21, 1964 the Board resumed physical custody of petitioner and he was returned to the State Prison to continue, in confinement, execution of his original sentence. On September 10, 1964 petitioner appeared before the Board, meeting at the prison, to be heard as to the alleged violation of his parole. Violation of parole was found and on the date of the hearing, the Board issued an order revoking the parole "as of ...... day of ........ 19.. and further orders that he be REMANDED to confinement in Maine State Prison for a period of ......."

By petition dated January 1, 1965 Mr. Collins seeks relief under the post-conviction habeas corpus act alleging:

(1)  That his release by the Parole Officer to the Lewiston Municipal Court to answer to the charge there against him was a waiver by the State of its jurisdiction over him to require resumption of execution in confinement of the original sentence, and

(2)  That the revocation and remand order issued by the Board on September 10, 1964 is invalid in that (a) no date of the revocation of parole is recorded therein, (b) that no statement of the remaining term of confinement is entered therein, and (c) that no statement fixing the time at which he would again be eligible for consideration for parole was entered therein.

Petitioner urges that by virtue of his surrender to the Lewiston authorities, and the errors charged in the revocation and remand order, he is entitled to release.

Indigency of the petitioner was established and counsel was appointed for the prosecution of both the petition and subsequent appeal to this court.

Because the record does not establish the order in which the respective "arrests" were made we shall consider them in alternate terms.

If the Lewiston police made an arrest at the time of the assault, and before execution of the parole warrant, they assumed lawful and primary custody of the accused. This custody could be retained in the face of a subsequent parole warrant and the parole warrant would serve only as a detainer to be executed when the primary custody of the Lewiston authority was relinquished. See *Stewart* v. *United States,* 267 F. (2nd) 378 (CA 10, Utah 1959) cert. den. 361 U.S. 844, 80 S. Ct. 97.

If the parole officer made an arrest upon the parole warrant and before execution of the assault warrant, petitioner's contention that the act of the Parole Officer in permitting the Lewiston Municipal Court to assume physical custody and require him to answer to the charge there pending against him was a waiver by the State of its right to retain or thereafter resume his physical custody under the subsisting felony sentence, was reviewed and decided in *Joseph S. Libby, Jr.* v. *State of Maine, et al.,* Me. , 211 A. (2nd) 586, upon pertinently identical facts. There was no loss of State control.

The legal attack made by petitioner to force a conclusion of waiver by the State in the present case raises one issue not argued in *Libby* and founded upon 34 M.R.S.A. § 1675 which reads:

> "When a parolee violates a condition of his parole or violates the law, a member of the board may authorize the director in writing to issue a warrant for his arrest. A probation-parole officer,

"* * * may arrest the parolee on the warrant and return him to the institution from which he was paroled. * * *."

The normal interpretation of this statute would conform to the rule that:

"In general, the word 'may,' used in statutes, will be given ordinary meaning, unless it would manifestly defeat the object of the statute, and when used in a statute is permissive, discretionary, and not mandatory." *Roy v. Bladen School District No. R-31 of Webster County* 84 N.W. 2d. 119, [4] 124 (Neb. 1957).

See also *Bradley, et al.* v. *Cleaver, et al.*, 95 P. (2nd) 295, [1] 297 (Kan. 1939).

It is urged that under this statute, legal principles require that the word "may" be read as "must." The principle of statutory construction to which reference is made is expressed briefly in *Low* v. *Dunham,* 61 Me. 566, 569, where the court said:

"The word 'may' in a statute is to be construed 'must' or 'shall,' where the public interest or rights are concerned, and the public or third persons have a claim *de jure* that the power shall be exercised."

Expressed more fully:

"The word 'may' in a statute will be construed to mean 'shall' or 'must' whenever the rights of the public or of third persons depend upon the exercise of the power to perform the duty to which it refers; and such is its meaning in all cases where the public interests and rights are concerned, or where a public duty is imposed upon public officers, and the public or third persons have a claim de jure that the power shall be exercised. Or, as the rule is sometimes expressed, whenever a statute directs the doing of a thing for the sake of

justice or the public good, the word 'may' will be read 'shall.' " *Pierson* v. *People ex rel. Walter*, 68 N.E. 383, 386 (Ill. 1903).

As expressed in *Anthony A. Bianco, Inc.* v. *R. M. Hess, et al.*, 339 P. (2nd) 1038, [10, 11] 1045 (Ariz. 1959) :

> " 'It is a general principle of statutory construction that, when the word "may" is used in conferring power upon any officer, court, or tribunal, and the public or a third person has an interest in the exercise of the power, then the exercise of the power becomes imperative, * * *' "

See also *Harless* v. *Carter*, 267 P. (2nd) 4, [3] 7 (Cal. 1954).

It is urged here that not only has the public an unquestionable interest in the efficient administration of the parole system, and in prompt action upon violation of parole, but a duty is imposed upon the parole officer whereby prompt arrest and return of the parolee upon violation is mandatory.

Our statute so read would require, it is argued, that upon violation of parole the Board *must* authorize the Director to issue a warrant for his arrest and that the violator *must* be arrested on the warrant and be forthwith returned to the institution from which he is paroled. Under this mandate, and assuming that other law enforcement authorities had not previously taken the violator into physical custody to answer to a current offense, the Board would be obliged to assume custody of the violator and forthwith return him to the institution from which he was paroled. Under such procedure, in our current situation, petitioner urges that the Board was chargeable with reducing the petitioner to custody before June 30, 1964, and would not be permitted to surrender the violator to face the current charge and by such surrender the right to later resume his custody was lost.

In conflict with this principle of statutory construction is the overriding principle that a statute is to be construed as intended by the legislature. For this principle no authority need be cited, and a resolution of the conflict must be in favor of legislative intent. *People* v. *Smith*, 97 N.E. 649, 650 (Ill. 1912); *Bradley, supra*, in [1] 297; *In re Estate of Cartmell*, 138 A. (2nd) 588, [6] 591 (Vt. 1958); *Harvey* v. *Board of Chosen Freeholders of Essex County, et al.*, 153 A. (2nd) 10, [10-12] 16 (N.J. 1959) and *City of Wauwatosa* v. *County of Milwaukee*, 125 N.W. (2nd) 386, [4] 389 (Wis. 1963).

The purpose of releasing an inmate of a penal institution to parole is to give him an opportunity to make good on the outside. The release to parole is a discretionary matter, with the Board in the light of the inmate's conduct while confined and the considered probability of his complying, out of confinement, with the conditions of parole fixed by the Board. He remains under the custody of the institution from which he is released, and while on parole is executing the unexpired portion of his sentence. 34 M.R.S.A. § 1671. The parole officer to whom the inmate is assigned is charged with supervising "* * * the conduct and condition of each person placed under his supervision and to use suitable methods to encourage him to improve his conduct and condition; * * *." 34 M.R.S.A. § 1502.

The legislature's delegation to the Board of power to act upon violations of parole is intentionally permissive, by prescribing that the Board *may* authorize an arrest. Only as discretion is imposed in the Board in this matter can the Board treat each parolee as an individual and, if the personality involved warrants it, it may be decided to continue the parole in spite of minor violation.

Were the statutory word "may" read as "must" no parolee would be entitled to a second chance. The statute in this respect is to be read as written.

Once the Board orders a warrant for parole violation to issue, other considerations arise, — not by reason of the parole statute, but by reason of the law governing the execution of criminal process.

In general terms an arrest warrant must be executed "with reasonable diligence and without unnecessary delay." 5 Am. Jur. (2nd) Arrest § 77. We have reduced the leeway allowed in the general rule by stating "that ministerial officers assuming to execute a * * * process upon the * * * person of a citizen shall execute it promptly, fully and precisely." *State* v. *Guthrie*, 90 Me. 448, 450, 38 A. 368; *Hefler* v. *Hunt*, 120 Me. 10, 14, 112 A. 675; and *State* v. *Couture*, 156 Me. 231, 240, 163 A. (2nd) 646.

The process issued by the Board read:

> "IT IS ORDERED, that you execute this warrant by taking said RAYMOND COLLINS wherever found in your jurisdiction and, in accordance with P.L. of 1959 Ch. 312 Sec. 15, return him safely to the institution from which he was paroled therein to be detained until the State Probation and Parole Board, at the meeting next held at said institution, shall have an opportunity to determine if the parole of said Raymond Collins shall be revoked or otherwise dealt with as to law and justice."

It was the duty of the officer holding that process to execute it as "promptly, fully and precisely" as the situation permitted, which situation may have involved primary custody by the Lewiston police as discussed earlier in this opinion. If the parole officer were the first to arrest, his custody was primary and the mandate of his warrant applied.

The law dealing with the execution of criminal process requires that the word "may" in the second sentence of 34 M.R.S.A. § 1675 be interpreted "must."

Assuming, without finding, that the arrest for violation of parole resulted in primary custody, as we have used the term, it does not follow, however, that petitioner has remedy in this post-conviction proceeding. His incarceration is lawful.

It is obvious that the grievance which petitioner seeks to express is that the imposition and execution of sentence imposed while on parole *extends pro tanto* his original sentence. Upon the facts of this case such concern is groundless. While on parole the individual is executing, out of confinement, his original sentence. A sentence imposed without qualifying statement and executed while on parole is served concurrently with the subsisting sentence (15 M.R.S.A. § 1702) except in cases specifically covered by statute such as those involving parolees from the Men's Reformatory and from the State Prison newly sentenced to the State Prison. 34 M.R.S.A. §§ 1675, and 1676.

If the prosecuting authorities feel justified in asking that a new sentence, other than to the State Prison, imposable upon a parolee be served after the execution of the subsisting sentence, they may, after conviction for the new offense move the court to "state in the judgment" that the new sentence be executed at the expiration of the subsisting sentence. 15 M.R.S.A. § 1702 and see *State* v. *Jenness*, 116 Me. 196, 100 A. 933.

Petitioner's criticism of the unexecuted portions of the Revocation and Remand Order are without merit.

34 M.R.S.A. § 1675, part of which has been quoted, goes on to provide:

> "If the board, after hearing, finds that the parolee has violated his parole or the law, it shall revoke his parole, set the length of time he shall serve of the unexpired portion of his sentence before he can again be eligible for hearing by the board,

and remand him to the institution from which he was released; * * *."

The statutory requirements have been met.

The statute does not require that the determination of the Board be recorded in the Order. The findings are recorded in the minutes of the Board Meeting and the inmate is entitled to be seasonably informed of the decisions affecting his confinement. The form of the order and its use is a matter of administration and if there were no such order, no statute or inherent rights of petitioner would be violated.

We must comment, however, that if the Board has found it administratively desirable to promulgate such form for the purpose of apprising the officials involved, it is equally desirable to execute it in conformity with the Board action. The date which the Board determines as the date of parole revocation, significant in the computation of the time allowed for good behavior (34 M.R.S.A. § 1675, 1.), the term of confinement remaining as affected by the time allowed for good behavior and the time fixed by the Board before the inmate can again be eligible for hearing for parole are properly matters of concern to him. The form in use when this petitioner appeared before the Board did not, in any event, contemplate the supply of the last item of information.

If the Order is to serve its ostensible purpose, it should bear pertinent information both for the efficient administration of the custodial institution and the enlightenment of the inmate.

There are here no legal errors to result in petitioner's release.

*Appeal denied.*
*Petition dismissed.*