John W. HARTLEY

v.

STATE of Maine

and

Allan L. Robbins, Warden, Maine
State Prison.

Supreme Judicial Court of Maine.

Jan. 17, 1969.

A. MacNichol, Portland, for plaintiff.

Garth K. Chandler, Asst. Atty. Gen., Augusta, for defendants.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, DUFRESNE and WEATHERBEE, JJ.

TAPLEY, Justice.

On appeal. This is an appeal by the State from the findings of a single Justice on a petition for post-conviction relief filed by the petitioner, John W. Hartley. The factual aspects of the case as presented to the presiding Justice are substantially as follows: On May 12, 1961 the petitioner, upon a plea of guilty to a charge of breaking and entering with intent to commit larceny, was sentenced to the Men's Reformatory, which sentence was suspended and he was put

upon probation for two years. This probation was revoked on February 20, 1962, whereupon the petitioner was committed to the Men's Reformatory for breach of conditions of probation. The sentence, if served in full, would terminate on February 19, 1965. On November 24, 1962 the petitioner was again paroled from the Reformatory and later a parole violator's warrant was issued, the petitioner apprehended and sometime in March of 1963 he was returned to the Reformatory. Again on July 6, 1963 he was paroled, at which time he "owed" approximately 1 year, 7 months and 14 days on his Reformatory sentence. The next activity of a criminal nature on the part of this petitioner occurred on November 11, 1963 when he was arrested and charged with breaking and entering with intent to commit larceny. This last offense was committed in Cumberland County while he was on parole. The events chronologically show that on November 13, 1963 a parole violator's warrant was issued and on the same day the Warden of the State Prison was notified that the petitioner was a parole violator. The petitioner appeared in the Superior Court, within and for the County of Cumberland, on December 20, 1963, having waived the indictment and pleaded guilty to an information charging him with breaking and entering with intent to commit larceny, whereupon he was sentenced to the State Prison for a term of not less than 2 years nor more than 4 years. He was committed to the State Prison on December 23, 1963 in execution of the sentence. At the time he was sentenced in the Superior Court to State Prison the sentencing Justice had knowledge of the fact that the petitioner "owed" time to the Men's Reformatory. Following his commitment to the State Prison the Parole Board met at the prison, revoked his parole on the Reformatory sentence and remanded him to State Prison to execute the unexpired portion of the Reformatory sentence.

The issues are: (1) Does a sentence imposed for a crime committed while on parole run consecutively to the sentence upon which the individual was paroled unless the Court at the time of imposing the second sentence indicated that the sentences were to run consecutively?

(2) Must a parole violator's arrest and detention warrant issue and be executed by service on a parolee before the parolee is obligated to serve the unexpired portion of the sentence on which he was paroled when he commits a crime while on parole and receives a sentence therefor?

(3) Does non-action of the Parole Board in not serving the warrant have the effect of terminating the unexpired sentence?

One of the main points of counsel's argument is that where the Parole Board allegedly failed to comply with the statutory requirements for revocation of parole the unexpired portion of the first sentence is executed concurrently with the new sentence and thus is terminated as a matter of law within the meaning of the provisions of 34 M.R.S.A., Sec. 1676, which reads:

"Any parolee who commits an offense while on parole who is sentenced to the State Prison shall serve the 2nd sentence beginning on the date of termination of the first sentence, *unless the first sentence is otherwise terminated by the board.*" (Emphasis supplied)

Section 1676 provides the sentences shall not run concurrently "unless the first sentence is otherwise terminated by the board." This presents the question: Did the Board under the circumstances of this case *terminate* the first sentence?

There is a distinction between the legal status of one who stands convicted of crime and the same person who later becomes a parolee from the institution of his confinement to which he was sentenced. When he elects to accept parole and thus obtains the liberty which it confers he must do so subject to the conditions upon which

the parole is granted. He agrees to the conditions imposed and should understand that a breach of the conditions will be the cause of revocation and resulting confinement for the purpose of serving the balance of his sentence. It is not a matter of right but one of grace and privilege accorded the parolee to be at liberty subject only to the conditions of his parole which gives him the opportunity of rehabilitation. It is apparent that the Legislature did not intend that a parolee who has been granted the privilege of parole and while on parole committed a crime against society should use this privilege to serve the balance of his term concurrently with the new sentence unless the Parole Board in its discretion "terminated" the sentence upon which he was paroled.

Counsel for the petitioner argues that there was error in the procedures taken, or failed to have been taken, by the Parole Board and therefore the sentences must be served concurrently.

In Libby, Jr. v. State of Maine, et al, 161 Me. 317, 211 A.2d 586, the petitioner was released on parole in December, 1962. On September 12, 1964 he was held at the police station in Portland charged with violation of parole arising from the facts which later resulted in his conviction for taking an automobile without consent of the owner. He subsequently pleaded guilty to the offense, was sentenced to 30 days in the County Jail and committed in execution of sentence. On September 14, 1964 a parole violation arrest warrant was issued and the petitioner was arrested by a parole officer. After serving the sentence of 30 days he was again arrested by a parole officer and taken to State Prison and, after hearing, his parole was revoked and he was remanded to the State Prison. The petitioner's contention in *Libby, Jr.,* supra, was that service of the 30 day jail sentence operated as a waiver of any obligation to serve the remainder of the State Prison sentence and, in addition, was an implied pardon or discharge therefrom.

The Court said, on page 319, 211 A.2d on page 587:

"We find no authority whatsoever in the parole officer or the warden which would permit such a startling result."

In Avellino v. United States of America, 2 Cir., 330 F.2d 490 at 491, the Court said:

"The Parole Board waited until all the criminal charges filed against Avellino and arising from the September 24, 1960 accident were finally adjudicated. This is in accordance with the practice of the Parole Board where criminal charges are pending against the parolee in a state court. While the Parole Board is not bound by the outcome of the state court proceeding, Hogan v. Zerbst, 101 F.2d 634 (5 Cir. 1939), it would seem to be a sensible deference to the state's prosecution of the charges to await the outcome of those proceedings. This enables the state prosecution to proceed with a minimum of interference and delay. Thus the Parole Board has the benefit of further information which may derive from the state court proceedings. Moreover, the Parole Board preserves its power to require that the state sentence and the remainder of the federal sentence be served consecutively."

This Court in Lewis v. Robbins, 150 Me. 121, 104 A.2d 838, speaks of the reasons for and the purposes of the statute requiring the sentence of a parolee convicted of a crime while on parole to run consecutively to the unexpired term of the sentence he was serving while on parole. On page 123, 104 A.2d on page 893 the Court said:

"He was given his freedom conditionally by the State and his liberty from confinement was enjoyed by virtue and because of the permission given him to go at large with the hope he would mend his ways and become a law abiding citizen. The violation of his parole and the commission of another crime did not affect his

status in this respect. He was, in fact, free until apprehended on the Warden's warrant. To hold otherwise would make it possible for a parolee who has violated the terms of his parole, to avoid service of the maximum sentence by committing another crime before he was taken in custody on the Warden's warrant if, as here, the justice imposing the new sentence failed to specify that execution thereof was to commence upon expiration of the first sentence. The contention of the petitioner, if true, would violate the purpose and intent of Section 23 with respect to sentence. The purpose of Section 23 is to prevent simultaneous execution of the first and subsequent sentence and to make it mandatory that the second sentence begin at the expiration of the first sentence when the second sentence is imposed upon a prisoner for a crime committed by him while enlarged upon parole. The contention of the petitioner is that for crimes committed by a prisoner who has been enlarged on parole simultaneous service of the old and new sentences is possible if the parole has been revoked, but if not revoked consecutive service of the sentences is mandatory. An interpretation that would permit this result would not only be absurd but it would violate the very purpose and spirit of the statute. No such result, in our opinion, was intended by the Legislature, and there can be no such interpretation of the two sections involved here."

In citing this case we do so with the knowledge that at the time it was written the statute did not read:

"unless the first sentence is otherwise terminated by the board."

In the instant case the parole violator's warrant was issued previous to the conviction and sentence. The record shows that the petitioner was committed to serve his sentence on December 23, 1963 and that on the same date he was returned to the State Prison. There was no endorsement on the mittimus by the trial justice that the sentence imposed be served after the expiration of the sentence then being served by the parolee (15 M.R.S.A., Sec. 1702) and for this reason the petitioner argues the sentences were to be served concurrently. He further contends that revocation by the Parole Board of the parole, after hearing on January 9, 1964, does not cure the fact that there was no endorsement on the mittimus that the sentence was to run consecutively to the sentence then being served by the parolee. We consider the legal effect of 34 M.R.S.A., Sec. 1676, which requires a parolee who commits an offense while on parole to serve the second sentence after the termination of the first sentence upon which he is on parole unless the first sentence is otherwise terminated by the Board in light of the provisions of 15 M.R.S.A., Sec. 1702 and the factual circumstances obtaining in the instant case. Provisions of 34 M.R.S.A., Sec. 1676 make it mandatory that service of the second sentence commence after the expiration of the first sentence unless the first sentence is "terminated" by the Board. At the time of sentencing and commitment the first sentence was not "terminated" by the Board. There never was a termination of the first sentence but there was a revocation of parole subsequent to the petitioner's commitment in execution of the second sentence.

This Court had occasion to speak of the effect of 34 M.R.S.A., Sec. 1676 (formerly Ch. 27–A, Sec. 16, R.S. 1954), and 15 M.R.S.A., Sec. 1702 (formerly Ch. 149, Sec. 1, R.S. 1954) in relation to the sentencing of a parole violator in Cressey v. State of Maine, et al, 161 Me. 295, 211 A.2d 572. While on parole Cressey was convicted of crime and sentenced. The sentencing Justice rule that the sentence imposed be executed concurrently with the sentence the defendant was then serving but did not include the ruling in the judgment. Cressey's position was that where the Court

had ruled, he was entitled to serve the two sentences concurrently. The Court said, on pages 300, 301, 211 A.2d on page 575:

"It may be conceded that the court did rule that the proposed three to eight year sentence was to be executed concurrently with the sentence the respondent was then serving, but the court did not include that ruling in the judgment and he could not have legally done so by reason of the statutory mandate requiring otherwise. It may be conceded that this case, upon its face, was an appropriate one for the court's ruling to have been endorsed on the mittimus, but such endorsement reflecting the court's ruling would have been contrary to the statute, of no benefit to appellant and therefore not an appropriate case for such endorsement. * * * The sentence here was not erroneous. The mandate of Section 16, Chapter 27–A, R.S. 1954 (now 34 M.R.S.A., Sec. 1676), quoted above is the distinction.

"The judgment rendered by the court as to the manner in which petitioner be required to serve his time was prescribed by that statute. The presiding justice could exercise no discretion in that respect."

The petitioner in the instant case, while on parole, on November 11, 1963 was arrested and charged with breaking and entering with intent to commit larceny. On November 13, 1963 the parole violator's warrant was issued; on December 20, 1963 he waived indictment, pleaded guilty on information and was sentenced from 2 to 4 years in State Prison and committed on December 23, 1963. He was received at the State Prison on December 23, 1963 by force of the mittimus from the Superior Court. He was accorded a hearing on the parole violator's warrant on January 9, 1964, resulting in revocation of parole.

■ The parole procedures are wholly statutory and are to be tested in light of statutory enactments affecting the privileges of a parolee. He has only such rights as are given to him by the legislative body. The function of the parole warrant issued by the Board only serves the purpose of holding a parolee for the Board pending hearing, but once the hearing has taken place the warrant becomes unimportant. The granting, revocation and termination of parole are within the exclusive jurisdiction of the Board subject to the procedural restrictions within which the Legislature circumscribes the power of the Board. Mottram v. State of Maine, et al, Me., 232 A.2d 809.

■ The statute provides the only means by which a parolee's unexpired sentence may be terminated by the Board.

"Whenever it appears to the board that a person on parole is no longer in need of supervision, it may order the superintendent or warden of the institution from which he was released to issue him a certificate of discharge, except that in the case of persons serving a life sentence who may not be discharged from parole in less than 10 years after release on parole." 34 M.R.S.A., Sec. 1678.

■ When the petitioner was charged with the crime in the Superior Court that Court took primary jurisdiction over him, imposed a sentence upon his plea of guilty and committed him to State Prison. At the time sentence was imposed provisions of 34 M.R.S.A., Sec. 1676 became effective. The Board did not at that time, or ever, terminate his sentence. It did, however, after hearing at the Prison on January 9, 1964, revoke his parole. Considering that the parolee was serving his Reformatory sentence at all times, even when he was on parole, he continued so to do when he was committed to the State Prison on December 23rd so that there was no conflict between the commitment for service of the last sentence and the first one because by statute the second sentence did not start to become operative until the first one

which he was still serving became satisfied. To be more specific, there was no interruption in the service of the Reformatory sentence by imposition of sentence and commitment to State Prison for the crime committed by this petitioner while he was on parole. 34 M.R.S.A., Sec. 1671(1).

We hold there was no violation of petitioner's rights insofar as the actions or non-actions of the Parole Board were concerned.

■ We are of the opinion, and so conclude, that the sentence imposed in the Superior Court for the crime committed by the petitioner while on parole commenced after he completed the Reformatory sentence.

■ Failure in executing parole violator's arrest warrant does not in any way nullify the provisions of Sec. 1676 requiring new and unexpired sentences to be served consecutively.

34 M.R.S.A., Sec. 1675 provides in part:

"When a parolee violates a condition of his parole or violates the law, a member of the board may authorize the director in writing to issue a warrant for his arrest. A probation-parole officer, or any other law enforcement officer within the State authorized to make arrests, *may* arrest the parolee on the warrant and return him *to the institution from which he was paroled*. At its next meeting *at that institution,* the board shall hold a hearing. The parolee is entitled to appear and be heard. If the board, after hearing, finds that the parolee has violated his parole or the law, it shall revoke his parole, set the length of time he shall serve of the unexpired portion of his sentence before he can again be eligible for hearing by the board, and remand him *to the institution from which he was released; except, that when a parolee from the Reformatory for Men (now Men's Correctional Center—P.L.*

*1967, Ch. 391) violates the law and is sentenced by the court to the Maine State Prison, any length of time set by the board to be served of the unexpired portion of his reformatory sentence may be served at the Maine State Prison."* (Emphasis supplied)

The warrant for the apprehension of the petitioner as a parole violator was issued on November 13, 1963 pursuant to the first sentence of the above Sec. 1675. At the time of issuance the petitioner had been arrested for the offense committed while on parole and was by that fact in the primary custody of the State, charged with the offense. This primary custody continued until he was delivered to the State Prison pursuant to a Superior Court mittimus. As we have hereinbefore said, the sole purpose of the warrant is to secure the arrest of the violator, returning him to physical custody. Where the petitioner was confined as a result of his conviction it would be a useless act to require the execution of the warrant. In Collins v. State (1965) 161 Me. 445, 452, 213 A.2d 835, 839, this Court construed the word "may" in the second sentence of Sec. 1675 as meaning "must" and noted that it became the duty of the officer to execute the warrant "as 'promptly, fully and precisely' *as the situation permitted."* (Emphasis supplied). In our view the "situation" *in the instant case did not require the ex*ecution of the warrant and Sec. 1675 should be so construed. Sec. 1675 further provides that the arresting officer must "return him to the institution from which he was paroled;" that his subsequent hearing before the Parole Board shall be "at that institution" and that their subsequent action may be to "remand him to the institution from which he was released." The mittimus issued on the second sentence did not return him to the Reformatory, nor was the parole violation hearing held there. It is apparent that the Legislature has not provided in express terms for every contingency which can arise but it has provided a clearly identifiable legislative

scheme with respect to parole violations and offenses committed by persons on parole, especially where sentences to the Reformatory and to the State Prison are involved. The requirements of Sec. 1675 set forth above must be read in the light of the exception at the end of the quoted portion which in turn must be read and construed in context with other related statutes which cast light on legislative intent.

34 M.R.S.A., Sec. 801 provides the purpose of the Reformatory for Men in these terms:

"The provisions for the safekeeping or employment of such inmates shall be made for the purpose of teaching such inmates a useful trade or profession, and improving their mental and moral condition."

The purpose of confinement in the State Prison is to impose punishment for crime "by confinement to hard labor." 34 M.R.S.A., Sec. 701. The Legislature has repeatedly demonstrated that it is mindful that the Reformatory is intended to be a place where the existing conditions and the composition of the inmate population are conducive to reform, training and rehabilitation. The persons there confined include some juveniles over 15 years of age, as well as young men not over the age of 35. The institution is open ended and maintains only moderate security provisions. The State Prison, on the other hand, is a maximum security institution and houses many prisoners who demonstrate so little potential for reform that their presence would tend to demoralize the type of program which the Reformatory is supposed to provide. In order to protect the purpose of the Reformatory, the Legislature has barred the commitment to that institution of one who has been previously committed to a State Prison where such fact is "known to the court." 34 M.R.S.A., Sec. 802. Further provisions have been made by the Legislature to transfer incorrigibles from the Reformatory to the State Prison to serve "the remainder of the term for which he might otherwise be held at said reformatory." 34 M.R.S.A., Secs. 807 and 808.

"The inmate after transfer (to State Prison) is still serving his original sentence to the Reformatory for Men with no enlargement thereof." Green v. Robbins (1962) 158 Me. 9, 13, 176 A.2d 743, 745.

Thus the exception in Sec. 1675 shows a clear legislative intent consistent with the legislative scheme that a parole violator from the Reformatory who is sentenced to the State Prison should not thereafter be returned to the Reformatory but must serve the balance of the Reformatory sentence in the State Prison. We construe the word "may" in the above quoted exception clause to mean "shall" in order to carry out the legislative intent that State Prison convicts shall be excluded from the Reformatory population. That part of Sec. 1675 which requires the return of the parole violator "to the institution from which he was paroled," a hearing "at that institution" and a remand "to the institution from which he was released" does not apply to cases coming within the exception clause.

The mittimus to State Prison from the Superior Court fully discharged the entire function which could have been performed by the parole violator's warrant. The latter, if executed properly, could do no more than lodge the petitioner-appellee in State Prison, at which institution he was entitled to a hearing before the Parole Board.

The Board never lost jurisdiction to do all that it was required to do under the circumstances of this case.

The entry shall be:

Appeal sustained.

MARDEN, J., did not sit.