**Reginald D. STILL**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Aug. 29, 1969.

Charles N. Nawfel, Waterville, for plaintiff.

Garth K. Chandler, Asst. Atty. Gen., Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, DUFRESNE and WEATHERBEE, JJ.

WEATHERBEE, Justice.

Petitioner's appeal from the denial of the Writ of Habeas Corpus raises the single question of whether a statute enacted after Petitioner's conviction but before his release to parole can affect, to the Petitioner's disadvantage, the portion of the sentence remaining for Petitioner to serve following revocation of the parole. On November 5, 1964 Petitioner was sentenced to serve one to four years at the Maine State Prison. Under law existing at that time, a parolee's sentence continued to run during the time he was absent from the prison on parole and the statutes and decisions were silent as to any effect the issuance of a parole violator's warrant might have upon the running

of the sentence. 34 M.R.S.A. §§ 1671, 1675. On October 27, 1965 our decision in Collins v. State, 161 Me. 445, 213 A. 2d 835 made it clear for the first time that under those statutes a parole violator's Maine State Prison sentence continued to run even while he was incarcerated in another prison undergoing punishment for a crime committed while on parole—a result not likely to contribute to the success of the parole system.

On January 27, 1966 there became effective immediately as emergency legislation a statute (P.L. 1965, Chap. 460) the effect of which is that the running of a parolee's sentence is interrupted by the issuance of a warrant for his arrest as a parole violator and that such interruption continues until the violator is returned to the prison (subject to the subsequent finding of violation by the Board). The obvious purpose for the change was to do away at once with situations where the remaining portions of the sentences of parolees who had violated the conditions of their paroles by committing other crimes would continue to run while they were incarcerated for their other crimes.

On June 2, 1966 Petitioner was released to parole. He soon committed several other crimes and was sentenced to imprisonment in a federal penitentiary. A parole violator's warrant was issued against him on October 10, 1966 but he was not returned to the Main State Prison until July 2, 1969 by which time he had completed his federal sentences.

If, as Petitioner contends, the statute in effect at the time Petitioner was sentenced controls, Petitioner's Maine State Prison sentence continued to run during the time he was in the federal prison and he had completed it in four years after it began, less any time earned by good behavior.

On the other hand, if P.L. 1965, Chap. 460 controls, Petitioner's sentence stopped running when the parole violator's warrant issued against him and did not start running again until Petitioner was returned to the Maine State Prison.

■ Petitioner's court appointed counsel has argued to us with care and resourcefulness Petitioner's contention that Chap. 460 is, when applied to Petitioner's sentence, completely inoperable as ex post facto legislation. He contends particularly that when Petitioner was sentenced and committed on November 5, 1964 his rights and responsibilities were fixed by the laws then in force and, particularly, that there was vested in him the right to be free no later than November 4, 1968.

In State v. Vannah, 112 Me. 248, 91 A. 985 (1914) and In re Stanley, 133 Me. 91, 174 A. 93 (1934) we recognized that the prohibitions of the Constitutions of the United States (Art. I, § 10) and of the State of Maine (Art. I, § 10) would make ineffective as *ex post facto* legislation any statutes which 1) would make criminal an action done before the passage of the law and which was innocent when done, 2) would make a crime or its punishment greater than it was when the crime was committed 3) would alter the rules of evidence to the detriment of the defendant or 4) would deprive him of some protection to which he has become entitled. 16 Am.Jur. 2d, Constitutional Law, §§ 402–410; 16A C.J.S. Constitutional Law § 435. Certainly the Legislature in 1966 could not increase the severity of the sentence which had been imposed upon Petitioner in 1964.

In our view the new statute has none of the offensive features which would bar its application to Petitioner's case. It does not increase his punishment nor take from him any protection or right to which he had become entitled. It requires him to serve no more than the maximum sentence which he received on conviction.

The significance of the change made by P.L. 1965, Chap. 460 can best be appreciated if examined against the background of other statutes applicable to State Prison sentences.

15 M.R.S.A. § 1743 requires that a sentence to the State Prison shall consist of a maximum and minimum term.

Under 34 M.R.S.A. § 702 a convict shall not be discharged until he has "served the full term for which he was sentenced * * * unless he is pardoned or otherwise released by legal authority".

34 M.R.S.A. § 1671 provides:

"The board *may* grant a parole from any state penal or correctional institution when a prisoner or inmate becomes eligible for a hearing by the State Probation and Parole Board. It may revoke a parole when a condition of the parole is violated.

"1. Duration and conditions of parole.

When the board grants a parole, upon release, the parolee shall serve the unexpired portion of his sentence, less deductions for good behavior, unless otherwise discharged therefrom by the board.

"2. Custody and control. While on parole, the parolee is under the custody of the warden or superintendent of the institution from which he was released but under the immediate supervision of and subject to the rules and regulations of the board *or any special conditions of parole imposed by the board.*" (Emphasis added.)

■ The result of enactment Chapter 640 was to add a new condition to a prisoner's parole, and its effect upon Petitioner was completely prospective. Parole is a matter of grace and the Petitioner had received no vested right to parole itself or to parole under then existing conditions when he was sentenced to prison. Mottram v. State, Me., 232 A.2d 809 (1967).

"There is a distinction between the legal status of one who stands convicted of crime and the same person who later becomes a parolee from the institution of his confinement to which he was sentenced. When he elects to accept parole and thus obtains the liberty which it confers he must do so subject to the conditions upon which the parole is granted. He agrees to the conditions imposed and should understand that a breach of the conditions will be the cause of revocation and resulting confinement for the purpose of serving the balance of his sentence. It is not a matter of right but one of grace and privilege accorded the parolee to be at liberty subject only to the conditions of his parole which gives him the opportunity of rehabilitation." Hartley v. State, Me., 249 A.2d 38 (1969).

■ Paragraph 2 of 34 M.R.S.A. § 1671 which empowers the Board to attach *special conditions* to a convict's parole is demonstrative of the Legislature's intention that conditions of parole should be established at the time of parole. There was no constitutional guarantee that provisions regarding parole would remain constant during the period of his sentence. People ex rel. Kurzynski v. Hunt, 25 F.Supp. 647 (D.C.1938); United States ex rel. Kelley v. Martin, 108 F.Supp. 672 (D.C.1952), aff'd, C.A.2d Cir., 200 F.2d 336; Commonwealth ex rel. Wall v. Smith, 345 Pa. 512, 29 A.2d 912 (1942); State ex rel. Koalska v. Swenson, 343 Minn. 46, 66 N.W.2d 337 (1954), cert. denied, 348 U.S. 908, 75 S.Ct. 308, 99 L.Ed. 712; In re Etie, 27 Cal.2d 753, 167 P.2d 203 (1946); People ex rel. King v. Morhous, 286 App.Div. 925, 142 N.Y.S. 2d 672, motion for leave to appeal denied, 309 N.Y. 1031, 129 N.E.2d 792 (1955). When on June 2, 1966 the Parole Board granted Petitioner release to parole, it in effect offered him the choice of remaining in prison for the duration of his sentence or of serving the balance of his sentence in the custody of the warden but outside the prison walls subject to conditions imposed by the Board or created by the Legislature. Hartley v. State, supra.

"As a part of the act of grace it is within the legislative power to attach conditions to the grant of parole and to provide for the administration thereof." State v. Fazzano, 96 R.I. 472, 194 A.2d 680, at

page 684, Mottram v. State, supra, at page 814, of 232 A.2d.

When Petitioner chose to accept parole, he took it subject to the conditions which were then a part of it including the condition which had been imposed by the Legislature through enactment of Chap. 460.

In Greenfield v. Scafati, 277 F.Supp. 644, aff'd 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1967), a three-judge United States District Court enjoined enforcement against Petitioner of a Massachusetts statute which denied a prisoner the opportunity to earn "good conduct" deductions for the first six months after his return to prison for violation of his parole. At the time of Petitioner's sentence the statute entitled him to earn "good conduct" deductions throughout the entire period of his incarceration but prior to Petitioner's release to parole a legislative amendment became effective which would have denied Petitioner good conduct deductions for the first six months of his reincarceration. In effect, as the Federal Court found, the new law would have increased the Petitioner's sentence and was a violation of the constitutional prohibition against ex post facto laws. Certainly, as that Court suggests, the existence of a statutory right to earn good conduct deductions would have been contemplated by the judge at the time sentence was imposed and the passage of the new law would have added to the period the sentencing judge determined the Petitioner should be incarcerated in the Massachusetts prison. It would create a new penalty.

We distinguish Scafati from the present case. While the good conduct deduction situation was doubtless contemplated by the Massachusetts sentencing judge, it could hardly be said that the Maine sentencing judge in the present case contemplated that part of the sentence he imposed would be served by Petitioner in another prison. Under Maine law the sentencing judge cannot contemplate any positive operation of parole. Our statutes guarantee a prisoner only the right to become eligible for a hearing on the question of his release to parole. The fact that the Maine Parole Board may decide to make an individual's parole subject to special conditions which it deems appropriate to the individual's problem—conditions dictated by situations which may not have existed at time of sentence—is to us persuasive of the fact that conditions of parole are not fixed at time of sentence.

■ We agree with the dicta in *Scafati* that a new statute which deprived a prisoner of the statutory right to qualify for parole or which penalized his violation of parole by a substantial increase in imprisonment could not be supported constitutionally. We conclude, however, that under Maine law the Petitioner, in accepting the conditions of his parole, was not required to consent to a new additional penalty for its violation (as in Massachusetts) but only accepted a new condition of parole which the Legislature had determined to have become essential to successful operation of the parole system. It may well have been that if this amendment had not been in effect the Parole Board, in its discretion, would have concluded that the weight of applicable considerations excluded the Petitioner as an appropriate subject for release on parole. We feel that the law controlling Petitioner's conditions of parole was that existing at the time he accepted the parole.

As Petitioner has not yet served the maximum sentence imposed upon him or been discharged by the Board he is not entitled to the Writ.

Appeal denied.

MARDEN, J., did not sit.

TAPLEY, J., sat at argument but retired before the opinion was adopted.