**Henry John SCHWANDA**

v.

**Edward BONNEY et al.**

Supreme Judicial Court of Maine.

Argued June 4, 1980.

Decided Aug. 7, 1980.

Powers & Bradford, Carl O. Bradford (orally), Freeport, for plaintiff.

Bernstein, Shur, Sawyer & Nelson, F. Paul Frinsko (orally), Portland, for defendants.

Before McKUSICK, C. J., WERNICK, GLASSMAN and ROBERTS, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

In this appeal we are called upon to address the validity of a local ordinance of the Town of Freeport which imposes requirements beyond the statutory criteria for the issuance of licenses to carry concealed weapons.

25 M.R.S.A. § 2031 provides that no person shall carry any concealed weapon as particularized therein unless licensed. The statute delegates the licensing responsibility to the municipalities:

> . . . the chief of police or city marshal of any city or the selectmen of any town *may* upon written application therefor issue to any legal resident of such city or town of good moral character, a certificate setting forth that such person has been duly licensed to carry such weapon mentioned in the certificate . . . (Emphasis supplied)

Freeport's Concealed Weapons Ordinance imposes criteria in addition to the statutory "good moral character" requirement:

> Applicants for a license hereunder shall further certify in writing to the Chief of Police, together with the reasons therefor, that a license to carry a concealed weapon is required for the personal safety and protection of the licensee or required in connection with the employment of the licensee, and if the latter, the application and certificate shall be so endorsed by the employer.

On February 16, 1979, Henry John Schwanda, a legal resident of Freeport, filed an application with the Police Department of the Town of Freeport for a license to carry a concealed weapon. On his application Schwanda stated that he desired the reference license in order to protect his weapon from the weather and the brush while hunting or trapping.

The Freeport Town Council [1] considered Schwanda's application at meetings on April 3 and 17, 1979. At these meetings Schwanda stated that he wanted the license to be able legally to cover up his weapon while hunting and travelling. Schwanda admitted that he did not need the license for self-protection or in the course of his employment. The Council denied Schwanda's application.

The transcript of the discussions at the Council meetings unequivocally supports the admission made in the answer to the instant complaint by counsel for the town officials

"[t]hat the Freeport Town Council voted to deny the issuance of a concealed weapons license to [Schwanda] the said Plaintiff for the primary reason that Plaintiff did not qualify for such license under Section 2.3 of the Concealed Weapon Ordinance; to wit, that the Plaintiff failed to certify that a license was 'required for the personal safety and protection of the licensee or required in connection with the employment of the licensee.' "

It clearly appears in this record that the Chief of Police and the members of the Council regarded Schwanda as a legal resident of "good moral character" within the meaning of the statute and local ordinance, but concluded that he did not meet the additional requirements of the Freeport ordinance, in that he failed to assert and prove that he needed a concealed weapons license either for self-protection or in the performance of his duties of employment.

Schwanda filed a complaint in Superior Court, Cumberland County, for review of the Council's action pursuant to M.R.Civ.P., Rule 80B. Since the pleadings admitted that the Council's denial of the license was based solely on the ordinance's requirement that the applicant have a need for such a license for his personal safety or in connection with his employment and that Schwanda had failed to show such a need, the plaintiff moved for summary judgment. This motion, pursuant to M.R.Civ.P., Rule 56(a), was accompanied by affidavit of the Freeport Chief of Police which averred that he had investigated and found Schwanda to be of good moral character. The Superior Court Justice ruled that the Freeport ordinance was in conflict with State law, to wit, 25 M.R.S.A. § 2031 and held null and void the provision of the ordinance requiring an applicant for such a license to show his need thereof for his personal protection or to carry on his employment. The Superior Court granted affirmative relief by ordering the Council to issue Schwanda a license. Judgment ensued, from which an appeal to this Court has been taken. We affirm the judgment of the Superior Court.

The question at issue is whether 25 M.R.S.A. § 2031 preempts municipal regulation of concealed weapons licenses.

■ Municipal corporations, as public bodies, may exercise only such powers as the Legislature has conferred upon them by law or which may have been granted to them directly by the Constitution. See *State v. Fin & Feather Club*, Me., 316 A.2d 351, 355 (1974); Article VIII, Part Second, Section 1, Constitution of Maine.

■ Whether the Legislature, by the enactment of 25 M.R.S.A. § 2031, did preempt the field respecting regulatory requirements in the issuance of concealed weapons licenses to the exclusion of the municipalities that perform the actual task of their issuance depends upon the interpretation of the legislative enactment which in turn must be traced to legislative intent. Legislative intendment always controls; this is a fundamental precept of statutory construc-

---

1. The councillors of the Town of Freeport serve in place of selectmen and have the same powers. See Private and Special Laws, 1929, chapter 68, section 3.

tion. *Labbe v. Nissen Corporation*, Me., 404 A.2d 564, 567 (1979); *State v. Hussey*, Me., 381 A.2d 665, 666 (1978); *State v. Tullo*, Me., 366 A.2d 843, 848 (1976). Courts should implement not only the intent but also the policy of the Legislature behind the legislation. *State v. Bellino*, Me., 390 A.2d 1014, 1021 (1978); *Prudential Insurance Company of America v. Insurance Com'r*, Me., 293 A.2d 529, 538 (1972).

The legislative history of a particular statute, as well as legislative activity concerning such or related legislation, is a helpful guide in ascertaining the intent of the Legislature. *Finks v. Maine State Highway Commission*, Me., 328 A.2d 791, 797 (1974); *State v. Allard*, Me., 313 A.2d 439, 447 (1973).

■ In interpreting a statute courts must presume that the Legislature did not intend unreasonable or absurd consequences, nor results inimical to the public interest. *Woodcock v. Atlass*, Me., 393 A.2d 167, 170 (1978); *Clark v. State Employees Appeals Board*, Me., 363 A.2d 735, 738 (1976); *Reggep v. Lunder Shoe Products Company*, Me., 241 A.2d 802, 805 (1968).

Initially, we observe that the statute, 25 M.R.S.A. § 2031, decrees a generalized prohibition against the carrying of concealed weapons: "[n]o person shall . . . wear under his clothes, or conceal about his person any firearm, . . ." Its licensing through municipal authorities is provided by way of legislative exception. The use of such broad mandatory prohibitory language respecting the carrying of concealed weapons, in juxtaposition with the licensing exception couched in specific limited terms

—may upon written application therefor issue to any legal resident of such city or town of good moral character, a certificate setting forth that such person has been duly licensed to carry such weapon—

does suggest, presumptively at least, a legislative purpose to control all aspects of the licensing of the carrying of concealed weapons to the exclusion of additional local regulations.

The anomalous result which would follow, if Freeport could impose its ordinance requirements in addition to the "good moral character" requirement of the statute, while other towns in the State applied only the statutory criterion, is a factor which indicates that the Legislature actually intended to preempt local regulation. It is undisputed that a license granted by the municipality of residence entitles the licensee to carry a concealed weapon anywhere in the State. Thus, an individual obtaining a license from another town in the State could carry a concealed weapon anywhere in Maine, including Freeport, even though he could not qualify under Freeport's ordinance requirements. A resident of Freeport, on the other hand, who did meet the statutory condition but lacked the additional eligibility standard of the ordinance could not carry a concealed weapon anywhere in the State. Obviously, the need for uniform application of the concealed weapons law precludes local regulation resulting in such inconsistencies.

■ Legislative history supports our conclusion that municipalities have not been delegated the power to impose restrictions beyond the statutory standard of "good moral character" in the licensing of persons to carry concealed weapons.

The original statute was passed in 1917. See P.L. 1917, c. 217. The bill as first proposed authorized the chief of police or city marshal or in his absence, either of his captains of police of any city or the selectmen of any town to issue a concealed weapons license "to *any* person of good moral character whose business or occupation requires the carrying of such weapons for protection." (Emphasis provided). S.P. 399, 78th Legislature. The Senate and House, however, enacted this licensing act only after the limitational self-protection provision was eliminated. See Legislative Record, 1917, pp. 922, 1111, 1222, 1264.

In 1939, the Legislature restricted the issuance of such licenses to the city or town authorities of the place of residence of the applicant. This in no way broadened the powers of the licensing officials. The

amendment did serve, however, to provide for the licensing municipalities a common source of revenue from their respective residents and assured the enabling Legislature that the prescribed test of "good moral character" of the applicant would be assessed in the community most likely to be knowledgeable thereof.

In 1967, the Legislature provided that the Chief of the Maine State Police or persons authorized by him to do so may license to carry concealed weapons nonresidents, not falling within the local licensing authority, but in this instance restricted the issuance of such licenses to persons in the employ of a public utility corporation, or a person, firm or corporation engaged in the business of transferring money or in a business of a similar nature, who are of good moral character and whose application is endorsed by their employer, and only during the working hours of their employment. See P.L. 1967, c. 368. By attaching to the issuance of concealed weapons licenses to nonresident applicants such stated conditions, analogous to some extent to the Freeport ordinance restrictions, but which the Legislature neither expressly nor impliedly required of resident applicants, our Legislators indicated anew their intention that such limitations were no part of the licensing law so far as residents were concerned.

Neither the Constitution, nor the home rule statute, so-called, gives the Town of Freeport the power to regulate, in the manner the defendants claim, respecting the issuance of licenses to carry concealed weapons. The Constitution of the State of Maine, in Article VIII, Part Second, Section 1, provides:

> The inhabitants of any municipality shall have the power to alter and amend their charters on all matters, not prohibited by Constitution or general law, which are local and municipal in character . . . . (Effective November 17, 1969).

The licensing act has statewide application; it does not involve "matters . . . which are local and municipal in character." The statutory implementation of the constitutional home rule provision does not sanc-

tion local regulation. This statute (30 M.R.S.A. § 1917) provides as follows:

> Any municipality may, by the adoption, amendment or repeal of ordinances or bylaws, exercise any power or function which the Legislature has power to confer upon it, *which is not denied* either expressly or *by clear implication,* . . . (Emphasis supplied).

As pointed out previously, municipal regulation beyond the statutory requirements of legal residency and good moral character in the licensing of persons to carry concealed weapons is by clear implication denied by the enabling legislative provisions.

The Freeport ordinance imposes licensing criteria beyond the statutory requirements and to that extent is invalid; the denial of the license to Schwanda based solely on his failure to meet such non-statutory prerequisites was error of law and must be reversed.

██ Conversely, the municipal authorities must grant a license to an applicant who does meet the statutory criterion. True, the language of 25 M.R.S.A. § 2031 is couched in terms of the ordinarily permissive "may," but, as stated in *Collins v. State*, 161 Me. 445, 213 A.2d 835 (1965), it is an accepted principle of statutory construction that, when the word "may" is used in imposing a public duty upon public officials in the doing of something for the sake of the public good, and the public or third persons have an interest in the exercise of the power, then the word "may" will be read "shall," the exercise of the power being deemed imperative by legislative intendment.

A similar issue was before this Court in *Roy v. Inhabitants of City of Augusta*, Me., 387 A.2d 237 (1978). There, a statute delegating to municipal officers of towns the responsibility for licensing billiard rooms specified that they "may" license suitable persons to keep such billiard rooms "in any place where it will not disturb the peace and quiet of a family." The Augusta ordinance delineated a criterion of regulation broader than was authorized by the statute and this Court ruled invalid that portion of the ordinance in excess of the regulatory

scope authorized by the enabling act and the case was remanded to the Superior Court with directions that it order the municipal officers of the City of Augusta to grant Roy a renewal of his license. Similar affirmative relief was afforded Schwanda in the Court below; in this, there was no error.

The entry will be:

Appeal denied.

Judgment affirmed.

All concurring.