**Andre Roger GILBERT**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.
Argued Nov. 19, 1985.
Decided Feb. 28, 1986.

Verrill & Dana, Kurt E. Olafsen (orally), Charles A. Harvey, Portland, for plaintiff.

James E. Tierney, Atty. Gen., Joseph A. Wannemacher (orally), Asst. Atty. Gen., Criminal Div., Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

In his petition for post-conviction relief, Andre Roger Gilbert, who in 1951 was sen-

tenced for life to Maine State Prison, contends that the Parole Board erred in 1975 in revoking his prior parole and in consistently denying him parole ever since. On the authority of *Bossie v. State*, 488 A.2d 477 (Me.1985), the Superior Court (Cumberland County) dismissed Gilbert's petition on the ground that the relief he seeks, parole and ultimate discharge, is of the type that neither the court nor the Parole Board has any power to grant to him because he was sentenced to life imprisonment at a time when the applicable statutes denied parole to a "lifer." On Gilbert's appeal, we vacate that dismissal, holding that parole, without discharge, of a lifer pursuant to a parole statute enacted subsequent to his sentencing does not constitute an unconstitutional encroachment on the Governor's exclusive power of commutation.

### I.

On June 29, 1951, Gilbert was convicted of murder and given the life sentence then mandated by R.S. ch. 117, § 1 (1944). In addition, the statute governing parole in 1951, R.S. ch. 136, § 12 (1944), made Gilbert ineligible for parole at any time.

After Gilbert's imprisonment, however, the legislature passed a succession of amendments that extended parole eligibility to persons serving life sentences. In 1953 a lifer was made eligible for parole after 30 years of imprisonment. P.L. 1953, ch. 382. In 1959, further revisions allowed a lifer to reduce that 30-year minimum by good behavior, and also vested the Parole Board with discretionary authority to give him a full discharge from his life sentence after he had successfully completed 10 years of parole. P.L. 1959, ch. 312, §§ 6, 13. Moreover, in 1969 the 30-year minimum was cut to 15 years, and that new minimum could be further reduced by good behavior. P.L. 1969, ch. 280.[1]

By the terms of these amendments to the parole statute, all enacted after his 1951 mandatory sentence for life, Gilbert, having served 18 years in prison, became in 1969 eligible for parole and eventual discharge. In fact, Gilbert was paroled several times between 1969 and 1973. In 1975, however, Gilbert pleaded guilty to aggravated assault and battery, committed while he was on parole, and was given a sentence of 2½ to 5 years to be served consecutively with his life sentence. Because of the new crime, the Parole Board revoked Gilbert's parole. At all times since, the Parole Board has denied his repeated requests to be paroled.

On March 5, 1984, Gilbert filed in the Superior Court the petition for post-conviction review that is the subject of this appeal. He challenged, *inter alia*, the validity of the Parole Board's revocation of his parole and the legality of his 1975 sentence. The Superior Court refused to reach the substantive issues that Gilbert attempted to raise. Instead, the court held that he should never have been granted parole, and never hereafter may be granted parole, because application of the post-1951 parole statute amendments to Gilbert, who was sentenced to a mandatory life imprisonment without the possibility of parole, infringes upon the Governor's exclusive constitutional power to commute sentences after conviction. In light of that holding, the Superior Court dismissed Gilbert's petition.

### II.

■ The Maine Constitution explicitly vests the Governor with the exclusive power to reduce criminal sentences after con-

---

1. The substance of the post-1951 amendments as applicable to a person in Gilbert's circumstance is encompassed within 34-A M.R.S.A. §§ 5801–5810 (Supp.1985–1986). *See id.* § 5803(3) (lifer eligible for parole board hearing prior to expira- tion of 15 years of imprisonment, less deduction for good behavior), and § 5809 (no discharge for lifer in less than 10 years after release on parole).

viction through the use of reprieves, commutations, and pardons. Me.Const. art. V, pt. 1, § 11 (1985).[2] Article III, section 2 of the Maine Constitution, moreover, provides for the strict separation of powers between the three branches. *State v. Hunter*, 447 A.2d 797, 799–800 (Me.1982). As a result, a legislative enactment that works a sentence reduction equivalent to a commutation will be viewed as an unconstitutional violation of the separation of powers. *Bossie v. State*, 488 A.2d at 480.

In *Bossie*, for example, we struck down as unconstitutional a statute increasing "good time" deductions available to prisoners committed to custody before its effective date. The new statute violated the separation of powers between the legislature and the Governor because when applied to inmates sentenced before its enactment, it acted to commute the length of existing sentences. In this case, therefore, we must address the question whether the amendments in the parole scheme made after Gilbert's 1951 sentencing and incarceration act as a commutation of his sentence.

 As we noted in *Bossie*, legislative acts that "commute" sentences are those that shorten the length of time a previously convicted and sentenced inmate must serve. 488 A.2d at 479–80. Parole, however, does not shorten the length of a sentence. Instead, parole is a change in the *manner* in which a sentence is served in that the parolee remains under the custody of the institution from which he is released but executes the unexpired portion of his sentence outside of confinement. *Collins v. State*, 161 Me. 445, 451, 213 A.2d 835, 838 (1965). *See also Hartley v. State*, 249 A.2d 38, 39–40 (Me.1969); *see generally* 59

Am.Jur.2d *Pardon and Parole* §§ 78–81 (1971). Unlike a commutation, the release on parole is conditional, and the parolee is subject both to the continuing supervision of his parole officer and to the threat of return to prison to serve out his sentence there if he violates a condition of parole. *Collins*, 161 Me. at 451, 213 A.2d at 838. As we explained in *Mottram v. State*, 232 A.2d 809, 813–14 (Me.1967):

> Parole ... is a legislative program of rehabilitation and restoration of persons convicted of crime to useful membership in society. The purpose of the law is to offer the institutionalized convict the opportunity to make good on his own outside the prison walls but under the immediate supervision of the probation-parole officer to whom the parolee must report and whose guidance he may seek at all times. ... To the extent that the parolee must strictly observe all the conditions of his parole and remain within the area of permitted enlargement of the prison walls consistent with effective supervision, he is not a totally free man.

*See also Morrissey v. Brewer*, 408 U.S. 471, 477–78 (1972), 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484; *Davidson v. United States*, 598 F.Supp. 926, 928 (N.D.Ind.1984); *see generally* Note, *Parole Revocation in the Federal System*, 56 Geo.L.J. 705 (1968). Because of the inherent differences between parole and commutation, a grant of parole to Gilbert on the authority of amendments passed after his conviction would not amount to a commutation of his sentence in violation of the constitutional demands of separation of powers.

### III.

 We cannot, however, reach the same conclusion as to the constitutionality

---

**2.** Me.Const.art V, pt. 1, § 11 (1985) provides:
 [The Governor] shall have power to remit after conviction all forfeitures and penalties, and to grant reprieves, commutations and pardons, except in cases of impeachment, upon such conditions, and with such restrictions and

limitations as may be deemed proper, subject to such regulations as may be provided by law, relative to the manner of applying for pardons. Such power to grant reprieves, commutations and pardons shall include offenses of juvenile delinquency.

of applying to Gilbert the discharge provision of the post-1951 amendments. In 1959, the legislature enacted a discharge provision permitting the Parole Board to make a complete and unequivocal reduction in a lifer's sentence after 10 years of parole.[3] P.L. 1959, ch. 312, § 13; now 34-A M.R.S.A. § 5809 (Supp.1985–1986). Once the Parole Board discharges a lifer, he is no longer subject to any of the conditions that attach to parole; he becomes a totally free man. If applied to Gilbert, who was convicted and sentenced to life imprisonment before the 1959 amendments took effect, the 10-year discharge provision would act to release him completely from his sentence, which when imposed in 1951 was by law to terminate only on his death. Like the "good time" law in *Bossie*, therefore, the discharge provision would act as a commutation of Gilbert's sentence and thereby usurp a power that the Maine Constitution vests exclusively in the Governor. *Cf. Kent County Prosecutor v. Kent County Sheriff*, 350 N.W.2d 298, 301, 133 Mich.App. 611 (1984) (Michigan jail overcrowding act, which allowed county sheriff to reduce sentences of inmates already convicted, held to contravene the governor's exclusive commutation power); *Boston v. Black*, 340 N.W.2d 401, 408, 215 Neb. 701 (1983) (application of legislatively created good time sentence reduction provisions to inmates sentenced previously acts to interfere with separation of powers in violation of the Nebraska constitution).

### IV.

■ Even if application of the 10-year discharge provision to Gilbert would be unconstitutional, the Parole Board is not for that reason barred from granting Gilbert

parole. The discharge provision is severable from the rest of the parole amendments, and the application of the discharge provision to Gilbert may be declared unconstitutional without affecting the validity of applying the parole provisions to him. *See, e.g., State v. Norton*, 335 A.2d 607, 617 (Me.1975). In 1959, the year in which the 10-year discharge provision was enacted, the legislature also passed a severability clause stating:

The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application.

P.L. 1959, ch. 363, § 4.[1] The legislature codified the longstanding common law rule of severability which held that " '[w]here an unconstitutional and invalid portion of a statute is separable from and independent of a part which is valid the former may be rejected and the latter may stand.' " *LaFleur ex rel. Anderson v. Frost*, 146 Me. 270, 289, 80 A.2d 407, 416 (1951) (quoting *Hamilton v. Portland Pier Site District*, 120 Me. 15, 24, 112 A. 836, 840 (1921)). Under the common law rule of severability and its codification in 1959, the post-1951 parole provisions can be validly applied to Gilbert even though the discharge provisions were declared null and void as to him.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

**3.** Between 1953 and 1959, lifers were entitled to the same maximum parole period as all other inmates, i.e., 4 years, and were eligible for automatic discharge thereafter. R.S. ch. 136, §§ 17, 24 (1944). This situation came about when the legislature amended R.S. ch. 136, § 12 (1944) so that the general parole provisions would apply, after 30 years of imprisonment, to any lifer who had never been convicted of any other capital

crime. P.L. 1953, ch. 382. See part I of this opinion.

**4.** Both the discharge provision and the severability clause became effective on September 12, 1959. P.L. 1959, ch. 363, § 4 is now codified at 1 M.R.S.A. § 71(8) (1979).